Wayne A. PETERS and Helen Peters,
Appellants (Plaintiffs below),

v.

Donald FORSTER, Appellee
(Defendant below).

No. 42S01–0301–CV–24.

Supreme Court of Indiana.

March 11, 2004.

Lane C. Siesky, Barber & Shoulders, Evansville, IN, Attorney for Appellants.

Daniel L. Siewers, Hart, Bell, Cummings, Ewing & Stuckey, Vincennes, IN, Attorney for Appellee.

ON PETITION TO TRANSFER FROM THE INDIANA COURT OF APPEALS, NO. 42A01–0109–CV–350.

RUCKER, Justice.

### Case Summary

Sustaining injury after slipping on a ramp attached to a home that he was visiting, Wayne Peters sued the contractor who installed the ramp. The trial court granted summary judgment in the contractor's favor on grounds that the "acceptance rule" precluded liability. On review the Court of Appeals reversed relying on an exception to the rule. Today we grant transfer and join those jurisdictions that have abandoned what has been described as an outmoded relic. In so doing we reverse the judgment of the trial court.

### Facts and Procedural History

Earl and Avonda Hamm owned a home in Vincennes, Indiana. Because Mr. Hamm was bedridden and because Mrs. Hamm's own ability to climb steps was declining, the Hamms decided to install a ramp on the front of their residence. A neighbor of the Hamms' daughter had constructed a ramp for his handicapped wife who had since passed away. Having no further use for the ramp, he sold it to the Hamms for less than a hundred dollars.

Donald Forster owned several rental properties and was the landlord of the Hamms' daughter. He also engaged in construction work as an independent contractor. By agreement with the Hamms, Forster transported the ramp from its original location to the Hamm residence where he and a few of his employees attached it to the front of the house with "a couple of screws." Appellants' App. at 35. Forster was aware the ramp did not meet

building code requirements for a wheelchair ramp, but he was unaware of code requirements for other types of ramps. After installation, the Hamms' daughter attached carpeting to the ramp.

On March 15, 1999, Wayne Peters delivered a meal to the Hamm residence. Using the ramp to enter the house Peters apparently encountered no difficulty. Upon leaving however, Peters slipped and fell sustaining serious injury. Thereafter, he filed a complaint for damages against the Hamms for negligence in maintaining the ramp. Peters' wife joined in the complaint on a loss of consortium claim. The complaint was later amended to include Forster as a party defendant.[1] Thereafter Forster moved for summary judgment which the trial court granted on grounds that as a matter of law Forster owed no duty to Peters because the Hamms "accepted and paid for" the work Forster performed. Appellants' App. at 1. On review, the Court of Appeals reversed relying on an exception to the general rule of nonliability where an owner accepts a contractor's work. *Peters v. Forster,* 770 N.E.2d 414, 419 (Ind.Ct.App.2002). We grant transfer and abandon the rule.

### Discussion

In order to prevail on a claim of negligence, a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach. *Benton v. City of Oakland City,* 721 N.E.2d 224, 232 (Ind.1999). Duty is a question of law for the court to decide. Absent a duty, there can be no breach of duty and thus no negligence or liability based upon the breach. *Wilson v. Haim-*

*baugh,* 482 N.E.2d 486, 487 (Ind.Ct.App. 1985).

Generally, Indiana has followed the rule that "contractors do not owe a duty of care to third parties after the owner has accepted the work." *Blake v. Calumet Constr. Corp.,* 674 N.E.2d 167, 170 (Ind.1996); *Citizens Gas & Coke Util. v. Am. Econ. Ins. Co.,* 486 N.E.2d 998, 1000 (Ind.1985). This rule, commonly referred to as the "acceptance rule" or the "completed and accepted rule," has its origins in English common law under which "architects and builders were immune from civil liability to third persons who were injured as a result of their negligence in design or construction." George Anthony Smith, *Recent Statutory Developments Concerning the Limitations of Actions Against Architects, Engineers, and Builders,* 60 Ky. L.J. 462, 463 (1972). Immunity was based on privity of contract. "Without this relationship one could not sue." *Id.* The authority most often cited for injecting a privity requirement into what was otherwise a negligence claim is *Winterbottom v. Wright,* 152 Eng. Rep. 402 (Ex. 1842). In that case, a party entered into a contract with the Postmaster General to keep the mail coach in good repair. A mail coach driver was injured when the coach collapsed and he sought damages from the party charged with maintaining the vehicle. Denying relief and articulating the sentiment of the members of the Court of Exchequer, Lord Abinger declared in pertinent part:

> There is no privity of contract between these parties; and if the plaintiff can sue, every passenger, or even any person passing along the road, who was injured by the upsetting of the coach, might bring a similar action. Unless we

---

1. Subsequently Peters and the Hamms entered an agreed settlement. As a result the Hamms are not parties to this appeal.

confine the operation of such contracts as this to the parties who entered into them, the most absurd and outrageous consequences, to which I can see no limit, would ensue....

*Id.* at 405. Early American common law mirrored the English common law rule requiring privity of contract. Accordingly, although a contractor was held liable for injury that resulted from his negligence before his work was completed, "his responsibility was terminated, and he was not liable to any third person once the structure was completed and accepted by the owner." W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 104A, at 722 (5th ed.1984).

The acceptance rule first appeared on Indiana's legal landscape with this Court's opinion in *Daugherty v. Herzog,* 145 Ind. 255, 44 N.E. 457 (1896). In that case the appellant's daughter was fatally injured when the wall of a building collapsed, striking her. Seeking recovery for the loss of his daughter's services, the father filed an action in negligence against the contractor who had reconstructed the building. Affirming the trial court's grant of a demurrer, this Court determined that the father had no cause of action against the contractor. The Court reasoned that the contractor was liable only to the party to whom he owed a duty. In that case it was the person with whom he was in privity, namely the owner with whom the contractor had contracted. This Court also noted that "[t]he repairs had been completed and accepted long before appellant's daughter was injured." *Id.* at 457. Continuing, the Court gave the following examples and explanation for its ruling:

> There must be causal connection between the negligence and the hurt; and such causal connection is interrupted by the interposition, between the negligence and the hurt of any independent human agency.... Thus, a contractor is employed by a city to build a bridge in a workmanlike manner; and after he has finished his work, and it has been accepted by the city, a traveler is hurt when passing over it by a defect caused by the contractor's negligence. Now the contractor may be liable to the city for his negligence, but he is not liable in an action on the case for damages. The reason sometimes given to sustain such conclusion is, that otherwise there would be no end to suits. But a better ground is that there is, no causal connection, as we have seen, between the traveler's hurt and the contractor's negligence ... [B]etween the contractor and the traveler intervened the city, an independent responsible agent, breaking the causal connection.

*Id.* at 457–58 (quotations omitted). Relying on *Daugherty* and its progeny, our courts have articulated two primary reasons supporting the acceptance rule: (1) the application of the doctrine of privity to cases involving negligence;[2] and (2) the owner's control of the entity when the

---

**2.** *See, e.g., Citizens Gas & Coke Util. v. Am. Econ. Ins. Co.,* 486 N.E.2d 998, 1000 (Ind. 1985) (articulating the general rule announced in *Daugherty*); *Travis v. Rochester Bridge Co.,* 188 Ind. 79, 122 N.E. 1, 2 (1919) (citing *Winterbottom* and declaring "[i]t may be stated as a general rule that the manufacturer of products ... rests under no duty to exercise care in their manufacture for the safety of persons with whom he has no privity of contract."); *Computer Co., Inc. v. Davidson Indus., Inc.* 623 N.E.2d 1075, 1079 (Ind.Ct. App.1993) (criticizing *Winterbottom* and *Daugherty* but declaring "Indiana law currently favors limited liability in this area. The intricacies of an elimination of the privity requirement in a case such as this are not for us, as we may not overrule our supreme court's precedent.").

injury occurred.[3]

The privity of contract requirement in the law of negligence has largely eroded. In a watershed decision Judge Cardozo, speaking for a majority on the New York court of last resort, ruled that a manufacturer of automobiles could be held liable in negligence to the ultimate purchaser of the vehicle, not just the immediate purchaser—the retail dealer. *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050, 1053 (1916). In essence, at least in the area of manufacturer's liability, *MacPherson* stripped the privity requirement of *Winterbottom* from its lofty position. Our courts have done likewise. *See, e.g., Perdue Farms, Inc. v. Pryor*, 683 N.E.2d 239, 241 (Ind.1997) ("Privity of contract is no longer required if a personal injury action for a defective product sounds in tort."); *Coca Cola Bottling Works of Evansville v. Williams*, 111 Ind.App. 502, 37 N.E.2d 702, 706 (1941) (citing *MacPherson* with approval and declaring that "the rule now in the best reasoned cases is that the manufacturer of foods or bottled goods sold for human consumption may be held liable to the ultimate consumer for injuries caused by foreign deleterious substances in such goods regardless of whether or not there was privity of contract between them"). Still, the privity of contract requirement in the area of contractors and builders has lingered in Indiana and apparently in several other jurisdictions as well.[4] However even for contractors and builders, privity as an absolute defense is subject to numerous exceptions. For example, even absent privity of contract, a contractor remains liable where (i) the contractor turns over work "in a condition that was dangerously defective, inherently dangerous or imminently dangerous such that it created a risk of imminent personal injury", *Citizens Gas*, 486 N.E.2d at 1000, or where (ii) "the thing sold or constructed be not imminently dangerous to human life, but may become such by reason of some concealed defect [and the] vendor or constructor ... knew of the defect and fraudulently concealed it." *Holland Furnace Co. v. Nauracaj*, 105 Ind.App. 574, 14

3. *See, e.g., Blake*, 674 N.E.2d at 171 (noting that in the one hundred years since adoption of the acceptance rule, this Court has not spoken on the rule's underlying rationale or how the rule should be applied; however "[i]n evaluating 'acceptance' for these purposes, the focus is on whether the owner was better able than the contractor to prevent injury to third parties at the time the harm occurred"); *Snider v. Bob Heinlin Concrete Constr. Co.*, 506 N.E.2d 77, 82 (Ind.Ct.App. 1987) ("Any danger which may have presented itself was within the sole control of ... the manager of the pool. We have noted that one who lacks possession and control of property ... should not be held liable for injuries he is no longer in a position to prevent."), *trans. denied; cf. Hill v. Rieth–Riley Constr. Co.*, 670 N.E.2d 940, 944 (Ind.Ct.App.1996) ("The rationale behind [the acceptance rule] is that the owner or general contractor has greater knowledge concerning the construction than the independent contractor.").

4. *See, e.g., Menendez v. Paddock Pool Constr.*, 172 Ariz. 258, 836 P.2d 968 (App.1991); *Sanchez v. Swinerton & Walberg Co.*, 47 Cal. App.4th 1461, 55 Cal.Rptr.2d 415, 418–20 (1996); *Ray's Plumbing Contractors, Inc. v. Trujillo Constr., Inc.*, 847 So.2d 1086, 1088 (Fla.Dist.Ct.App.2003); *Flagler Co. v. Savage*, 258 Ga. 335, 368 S.E.2d 504 (1988); *Griffin v. Int'l Ins. Co.*, 727 So.2d 485, 491 (La.Ct. App.1998); *Couch v. City of D'Iberville*, 656 So.2d 146 (Miss.1995); *Gast v. Shell Oil Co.*, 819 S.W.2d 367 (Mo.1991); *Dvorak v. Bunge Corp.*, 256 Neb. 341, 590 N.W.2d 682, 687 (1999); *Thrift v. Food Lion, Inc.*, 336 N.C. 309, 442 S.E.2d 504 (1994); *Schlender v. Andy Jansen Co.*, 380 P.2d 523 (Okla.1962); *Bromaghim v. Furney*, 808 A.2d 615, 617 (R.I. 2002); *First Church of Christ Scientist v. City of Seattle*, 92 Wash.App. 229, 964 P.2d 374, 377 (1998); *Roush v. Johnson*, 139 W.Va. 607, 80 S.E.2d 857, 873–74 (W.Va.1954); *Wolfe v. Oliver Constr. Co.*, 16 Wis.2d 337, 114 N.W.2d 441 (Wis.1962).

N.E.2d 339, 342 (1938).[5]

The declining role of privity in the area of manufacturer's liability, along with the growing list of exceptions to the privity requirement, has contributed to the increasing number of jurisdictions that have abandoned the acceptance rule. *See, e.g., Strakos v. Gehring*, 360 S.W.2d 787, 791 (Tex.1962) (characterizing the rule as an "oft-repudiated and emasculated doctrine" that has become "enveloped by complex exceptions to cover such situations as nuisance, hidden danger, and inherently dangerous conditions"); *Lynch v. Norton Constr., Inc.*, 861 P.2d 1095, 1099 (Wyo. 1993) (observing "the rule of nonliability with its many exceptions is more cumbersome than traditional negligence analysis, while leading us to the same conclusion in most cases"). In addition, the "control" rationale in support of the acceptance rule has also waned in importance as an exculpatory factor. As one court explained:

> [The acceptance rule] has the undesirable effect of shifting responsibility for negligent acts or omissions from the negligent party to an innocent person who paid for the negligent party's services. Furthermore, the shifting of responsibility is based on the legal fiction that by accepting a contractor's work, the owner of the property fully appreciates the nature of any defect or dangerous condition and assumes responsibility for it. In reality, the opposite is usually true. Contractors, whether they be building contractors, or architects, are hired for their expertise and knowledge. The reason they are paid for their services is that the average property owner does not have sufficient knowledge or expertise to design or construct real property improvements safely and soundly.... How then can we logically conclude that simply because the professional has completed his or her services and the contractee has paid for those services, liability for the contractor's negligence should shift to the innocent and uninformed contractee? We cannot.

*Pierce v. ALSC Architects, P.S.*, 270 Mont. 97, 890 P.2d 1254, 1262 (1995). Consistent with this reasoning a number of jurisdictions have abandoned the acceptance rule in favor of what has been described as the so-called "modern rule" or "foreseeability doctrine."[6]

As Professor Prosser observes:

**5.** Although Indiana has had occasion to address only two exceptions to the rule, other exceptions include: (1) the contractor creates a situation which he or she knows or should know is inherently dangerous, (2) the contractor's conduct may be regarded as an implied invitation to third persons to come in contact with defective work, and (3) the finished work constitutes a nuisance per se. *See* 41 Am. Jur.2d Independent Contractors § 74 (1995) (compiling cases from other jurisdictions).

**6.** *See McFadden v. Ten–T Corp.*, 529 So.2d 192, 200 (Ala.1988); *Brent v. Unicol, Inc.*, 969 P.2d 627, 630 (Alaska 1998); *Suneson v. Holloway Constr. Co.*, 337 Ark. 571, 992 S.W.2d 79, 85 (1999); *Wright v. Creative Corp.*, 30 Colo.App. 575, 498 P.2d 1179, 1181 (1972); *Minton v. Krish*, 34 Conn.App. 361, 642 A.2d 18, 21 (1994); *Virden v. Betts & Beer Constr. Co., Inc.*, 656 N.W.2d 805, 807 (Iowa 2003); *Talley v. Skelly Oil Co.*, 199 Kan. 767, 433 P.2d 425, 432, 434 (1967); *Gilbert v. Murray Paving Co., Inc.*, 2003 WL 22519537, —— S.W.3d —— (Ky.Ct.App.2003); *Carven v. Hickman*, 135 Md.App. 645, 763 A.2d 1207, 1211–13 (Md.Ct.Spec.App.2000); *McDonough v. Whalen*, 365 Mass. 506, 313 N.E.2d 435, 439 (1974); *Feaster v. Hous*, 137 Mich.App. 783, 359 N.W.2d 219, 223 (1984); *Pierce*, 890 P.2d at 1262; *Russell v. Arthur Whitcomb, Inc.*, 100 N.H. 171, 121 A.2d 781, 782 (1956); *Juliano v. Gaston*, 187 N.J.Super. 491, 455 A.2d 523, 525 (App.Div.1982); *Tipton v. Clower*, 67 N.M. 388, 356 P.2d 46, 49 (N.M 1960); *Colonno v. Executive I Assocs.*, 228 A.D.2d 859, 644 N.Y.S.2d 105, 107 (N.Y.App.Div. 1996); *Dinger ex rel. Dinger v. Strata Corp.*,

It is now the almost universal rule that the contractor is liable to all those who may foreseeably be injured by the structure, not only when he fails to disclose dangerous conditions known to him, but also when the work is negligently done. This applies not only to contractors doing original work, but also to those who make repairs, or install parts, as well as supervising architects and engineers. There may be liability for negligent design, as well as for negligent construction.

Keeton et al., *supra*, § 104A, at 723. This trend also is reflected in the Restatement (Second) of Torts:

One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.

Restatement (Second) of Torts §. 385 (1965).

In essence instead of applying the non-liability rule, a number of courts have embraced the rule that a contractor is liable for injuries or death of third persons after acceptance by the owner where the work is reasonably certain to endanger third parties if negligently completed. *See id.* This view adopts the rationale that there are insufficient grounds to differentiate between liability of a manufacturer of goods and that of a building contractor. *See id.* We think this is the better view and today we endorse it as well. A rule that provides that a builder or contractor is liable for injury or damage to a third person as a result of the condition of the work, even after completion of the work and acceptance by the owner, where it was reasonably foreseeable that a third party would be injured by such work due to the contractor's negligence, is consistent with traditional principles of negligence upon which Indiana's scheme of negligence law is based.

■ We hasten to add that a contractor's liability under this reasoning is not absolute, but predicated upon negligence, that is, duty, breach of duty, and injury proximately caused by the breach. Thus for example, there is no breach of duty and consequently no negligence where a contractor merely follows the plans or specifications given him by the owner so long as they are not so obviously dangerous or defective that no reasonable contractor would follow them. Keeton et al., *supra*, § 104A, at 723–24; *see also Ross v. State*, 704 N.E.2d 141, 145 (Ind.Ct.App.1998) (noting that where a contractor is not following his or her own plans, but those provided by the owner, "liability is imposed only where the plans are so obviously defective that no reasonable contractor would follow them").

■ In this case Peters alleged among other things that Forster installed the ramp in violation of applicable building codes. The trial court granted summary

607 N.W.2d 886, 891 (N.D.2000); *Sumner v. Lambert*, 96 Ohio App. 53, 54 O.O. 173, 121 N.E.2d 189, 195–96 (1953); *Thompson v. Coats*, 274 Or. 477, 547 P.2d 92, 95 (1976); *Masciangelo v. Dolente*, 222 Pa.Super. 368, 295 A.2d 98, 99–100 (1972); *Stanley v. B.L. Montague Co., Inc.*, 299 S.C. 51, 382 S.E.2d 246, 249 (App.1989); *McMacken v. South Dakota*, 320 N.W.2d 131, 133 (S.D.1982), *overruled on other grounds*; *Johnson v. Oman Constr. Co., Inc.*, 519 S.W.2d 782, 788 (Tenn. 1975); *Strakos*, 360 S.W.2d at 791; *Tallman v. City of Hurricane*, 985 P.2d 892, 894 (Utah 1999); *Lynch*, 861 P.2d at 1099.

judgment in favor of Forster on grounds that he owed Peters no duty as a matter of law based on the acceptance rule. Because we have abandoned the rule, Forster's liability must be evaluated under traditional principles of negligence.

In general a contractor has a duty to use reasonable care both in his or her work and in the course of performance of the work. *See Computer Co.*, 623 N.E.2d at 1076. However, "[t]he duty of reasonable care is not, of course, owed to the world at large, but rather to those who might reasonably be foreseen as being subject to injury by the breach of the duty." *Thiele v. Faygo Beverage, Inc.*, 489 N.E.2d 562, 574 n. 4 (Ind.Ct.App.1986). Thus, Forster contends that even if the acceptance rule is abandoned, the judgment of the trial court nonetheless should be affirmed. Forster points out that even under the so-called modern rule a contractor is still not liable unless it is reasonably foreseeable that a third person would be injured by the contractor's action. According to Forster the chain of causation in this case was broken between his action and Peters' injury thus rendering the injury unforeseeable. In support Forster asserts: (i) the Hamms controlled the ramp at the time Peters fell; (ii) the Hamms' daughter altered the ramp by installing carpet on it; and (iii) there was no evidence presented that the ramp was likely to cause injury.

We view Forster's claim as an argument that Peters' injury was not the proximate cause of Peters' alleged conduct. Although a rigorous definition is elusive, proximate cause has been defined as "that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Orville Milk Co. v. Beller*, 486 N.E.2d 555, 559 (Ind.Ct.

App.1985). The foreseeability of an intervening cause and, thus, whether the defendant's conduct is the proximate cause of the plaintiff's injuries, is generally a question of fact for the jury to decide. *Nat'l R.R. Passenger Corp. v. Everton by Everton*, 655 N.E.2d 360, 366–67 (Ind.Ct.App. 1995), *trans. denied; see also Conder v. Hull Lift Truck, Inc.*, 435 N.E.2d 10, 15 (Ind.1982) ("[T]he question concerning foreseeability of intervening third party misconduct is most often held to be a question of fact for the jury's determination."). Only in plain and indisputable cases, where only a single inference or conclusion can be drawn, are the questions of proximate cause and intervening cause matters of law to be determined by the court. *Crull v. Platt*, 471 N.E.2d 1211, 1215 (Ind.Ct.App.1984). The facts of this case do not lead us to the conclusion that the foreseeability of the intervening causes Forster articulates is a question for the court to decide. Rather, this is a question for the jury.

## Conclusion

The trial court entered summary judgment in favor of Forster on grounds he owed no duty to Peters based on the acceptance rule. Today we abandon the rule in favor of traditional principles of negligence. As such we conclude Forster owed Peters a duty of reasonable care. Because in this case neither breach of duty nor proximate cause can be determined as a matter of law, summary disposition is inappropriate. We therefore reverse the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.