MISSION LAND CO. and General Electric Co., Plaintiffs–Appellants,

v.

BFS DIVERSIFIED PRODUCTS LLC, Defendant–Appellee.

No. 03–3824.

United States Court of Appeals, Seventh Circuit.

Argued June 4, 2004.

Decided Feb. 11, 2005.

As Amended on Denial of Rehearing March 4, 2005.

Jeffrey J. Asperger, Asperger Caraher, James Geis, Chicago, IL, for Plaintiff–Appellant.

Mark J.R. Merkle, Krieg Devault, Indianapolis, IN, for Defendant–Appellee.

Before FLAUM, Chief Judge, WOOD, and EVANS, Circuit Judges.

## ORDER

When a severe thunderstorm struck Northern Indiana on June 27, 1995, it left considerable damage in its wake, including harm to the roof of a warehouse that was leased to General Electric Company. The resulting water leaks damaged most of the inventory that GE had stored in the warehouse. Along with Mission Land Company, which had designed and built the warehouse some seven years prior to the storm, GE sued the general contractor, McShane Construction Company; the roof contractor, Northern Illinois Roofing, Inc. ("NIR"); the design and architectural firm, Friedman, Dobrin & Associated, Ltd.; and Firestone Building Products Company, which after various corporate restructurings is now a division of BFS Diversified Products LLC, and which had supplied and warranted some of the roof components. On this appeal, we are concerned only with Firestone's alleged liability. The district court found that Firestone owed no duty to the plaintiffs, and that even if it did have some duty, its liability was extinguished by the accepted work doctrine then recognized in Indiana.

For those reasons, the court granted summary judgment in favor of Firestone. After the claims against the other parties were resolved, GE and Mission Land appealed to this court. We affirm.

### I

In 1987, Mission Land and GE entered into a contract for the construction and design of a warehouse facility in Munster, Indiana. Mission Land's task was to design and construct the warehouse and then to lease it to GE. Construction began, and in 1988, Mission Land engaged NIR to construct the roof. NIR agreed to install a Firestone RubberGard Ballasted Roof System, which it purchased from Firestone. The parties decided to use a "single-ply ballasted roof," which is one in which a waterproof material such as the rubber membrane used here is laid over insulation and deck material; the membrane is held in place using some kind of ballast. NIR chose to use river rocks layered over the rubber membrane manufactured by Firestone. As part of the deal, Firestone agreed to provide a limited warranty on the roof against leaks, if the roof was installed in accordance with Firestone's specifications and in accordance with the drawings drafted by the architect. Before the warranty could enter into force, Firestone had to inspect the roof. It did so in 1989. After the inspection, Firestone recommended that certain repairs be made; those repairs were apparently completed, and Firestone and NIR then signed off on the warranty.

In 1995, six years or so after GE took possession of the warehouse, the thunderstorm hit. It blew away the ballast and tore the rubber membrane; the resulting leaks damaged the GE appliances stored in the warehouse. Mission Land, a California corporation with its principal place of business in California, and GE, a New

York corporation with its principal place of business in Connecticut, filed suit under the diversity jurisdiction against Firestone and the other defendants noted above. At the time, Firestone was a division of Bridgestone/Firestone, Inc., which was incorporated in Ohio with its principal place of business in Tennessee; it is now a division of BFS Diversified Products LLC, a Delaware corporation with its principal place of business in Indiana. The complaint asserted various claims based on negligence and other theories.

Firestone filed a motion for summary judgment on all counts, which the district court granted. It found that GE and Mission Land could not show that Firestone owed them any duty, and that, even if they could, any duty would be extinguished by the accepted work doctrine, which immunizes a contractor from liability once his work has been accepted by the owner or tenant. On appeal, Mission Land and GE contend that the accepted work doctrine either does not apply or, if it does, that the question whether Mission Land accepted Firestone's work is disputed on this record.

This court reviews the district court's decision to grant summary judgment *de novo. Ochana v. Flores*, 347 F.3d 266, 269 (7th Cir.2003). We take the factual record in the light most favorable to GE and Mission Land, the parties opposing the motion. *Id.* Nevertheless, we may affirm on any basis that appears in the record. *Sherrod v. Lingle*, 223 F.3d 605, 614 (7th Cir.2000). That fact is particularly important here, because since the time when the district court made its summary judgment ruling, the Indiana Supreme Court has abandoned the accepted work doctrine in favor of traditional principles of negligence. See *Peters v. Forster*, 804 N.E.2d 736 (Ind.2004). Mission Land and GE are mistaken, however, to assume that the mere existence of the *Peters* decision compels reversal. Instead, we must analyze both the arguments made below and the evidence, taken in the light most favorable to them, to see whether the district court's conclusion was correct. Whether Firestone owed a duty to Mission Land and GE is a question of law, which we will consider based on the summary judgment record. In light of *Peters*, we analyze Firestone's potential liability under traditional theories of negligence. Even under a normal negligence analysis, we find that the district court rightly concluded that Firestone owed no duty to Mission Land and GE.

## II

Indiana law, which the parties agree applies, recognizes that "a party may gratuitously or by contractual undertaking to render services, place himself in such a position that the law will impose upon him a duty to perform his undertaking in a manner which will not jeopardize the safety of others, including third persons." *Harper v. Guarantee Auto Stores*, 533 N.E.2d 1258, 1262 (Ind.Ct.App.1989). In order to assess an actor's liability to third parties, the Indiana courts have adopted the Restatement (Second) of Torts § 324A. *Baker v. Midland–Ross Corp.*, 508 N.E.2d 32, 34 (Ind.1987). Under § 324A, Mission Land and GE must demonstrate that Firestone engaged in an undertaking to render services, and either: (1) that the risk of harm to Mission Land and GE increased due to Firestone's failure to exercise reasonable care; (2) that Firestone undertook to perform a duty owed by NIR to Mission Land and GE; or (3) that the harm suffered by Mission Land and GE was a consequence of their reliance on services rendered by Firestone. *Harper*, 533 N.E.2d at 1262.

Mission Land and GE assert that Firestone had a duty to warn of deficiencies in the roof caused by either an insufficient amount of ballast or from the use of an inferior wood nailer. They theorize that if Firestone had performed an appropriate inspection of the roof back in 1989, it would have found the weaknesses that later resulted in the roof's inability to withstand the thunderstorm and would have either corrected the problem or at least warned the plaintiffs about it. Firestone responds that it merely warranted its own product, the rubber membrane, against leaks and tears, but that the membrane is part of an entire roof system, and the system (as opposed to its component parts) was not included in Firestone's warranty. Firestone continues that it was the responsibility of the architect, the roofing subcontractor, or the general contractor to inspect and sign off on the roof as a whole. The issue we must resolve is whether Firestone's inspection was enough to give rise to liability in tort to Mission Land and GE. We examine each possible application of § 324A in turn.

■ The first way that Mission Land and GE can establish Firestone's duty to either or both of them is by demonstrating that the risk of harm to Mission Land and GE *increased* because of something Firestone did, or something that it was required to do and failed to do, in the course of its inspection. The record demonstrates, and the plaintiffs agree, that insufficient ballasts or inferior wood nailers (or both) caused the damage to the roof. These were not deficiencies in Firestone's product, however. Although Firestone set forth minimum requirements for the ballasts and wood nailers and inspected the roof against these requirements, it did not assume responsibility for all the work NIR had performed. Providing directions about how to install a component part of a larger project and inspecting the project to determine whether those directions were met does not make the component-part manufacturer a warrantor of everyone else's work. Firestone's limited inspection to see whether the installation met its minimum requirements did not excuse NIR or the general contractor from making an inspection of the roof as a whole. Accordingly, Firestone's limited inspection, even if deficient, did not give rise to any increased risk of harm to Mission Land or GE, and thus the plaintiffs cannot proceed under the first theory recognized by § 324A.

■ The second path to liability under § 324A requires Mission Land and GE to prove that Firestone undertook to perform a duty owed to Mission Land and GE by someone else, either NIR or another contractor or sub-contractor. Although this sounds closest to the theory the plaintiffs are pursuing, the record shows that it cannot succeed. NIR and Firestone signed warranties that demonstrate that Firestone was not volunteering to perform any obligations owed by another party. After its 1989 inspection, Firestone pointed out certain repairs that had to be made. NIR later affirmed that it (not Firestone) had completed the required repairs and that the roof guard was now installed to Firestone's specifications. Firestone relied on NIR's assurances that the ballast and nailer were adequate. The lack of any undertaking to perform the duties that NIR owed to Mission Land or to GE precludes the plaintiffs from establishing liability under this aspect of § 324A.

■ Finally, under § 324A's third avenue to liability, the record shows that Mission Land and GE could not have relied on Firestone's inspection of the roof. NIR hired Firestone to provide a component part of the roofing system and to inspect the installation of its product. There is no

evidence that Mission Land or GE knew that Firestone inspected the roof when it did, as this was purely a transaction between NIR and Firestone. Because Mission Land and GE could not have relied on assurances of which they were unaware, the plaintiffs cannot demonstrate liability under § 324A's third approach.

Mission Land and GE can succeed in moving forward in this case only if they can present evidence that would allow a reasonable trier of fact to find that Firestone gratuitously undertook the responsibility of inspecting the final roof as a whole. They have not done so. Firestone's own warranty shows that its inspection was meant only to support the warranty on its own product—that is, to ensure that its product was used and installed appropriately. As it turned out, there were problems with other parts of the system that led Firestone's rubber guard to fail, but those were failures of products and services that Firestone neither provided nor inspected. Rather, Firestone relied on the roofing contractor to install the guard according to its specifications. The failure of the contractor to do so was not something Firestone was in a position to discover or warrant against.

Without a duty, Firestone owes nothing to Mission Land or to GE. We therefore **AFFIRM** the judgment of the district court dismissing the plaintiffs' claims against Firestone.