**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 31 2014, 10:51 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**R. ROBERT YEAGER**
Yeager Good & Baldwin, PA
Shelbyville, Indiana

ATTORNEYS FOR APPELLEE:
Inland Greensburg Commons, LLC
Inland US Management LLC

**PAUL T. FULKERSON**
**MARY BETH DUGGAL**
Skiles Detrude
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:
Brooks Striping, Inc.

**M. MICHAEL STEPHENSON**
**BRADY J. RIFE**
McNeely, Stephenson, Thopy & Harrold
Shelbyville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEWEL L. and JOHN E. JOHNSON, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No. 16A01-1311-CT-476 |
| | ) | |
| BROOKS STRIPING, INC., INLAND WESTERN | ) | |
| GREENSBURG COMMONS LLC, and INLAND | ) | |
| US MANAGEMENT LLC, | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE DECATUR SUPERIOR COURT
The Honorable Matthew D. Bailey, Judge
Cause No. 16D01-1201-CT-36

**March 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Jewel L. Johnson and John E. Johnson (collectively, the Johnsons) appeal from the trial court's orders granting summary judgment in favor of Brooks Striping, Inc. (Brooks), and Inland Western Greensburg Commons, LLC, and Inland US Management, LLC (collectively, Inland) in Jewel's cause of action against Brooks and Inland alleging negligence with respect to her fall in the parking lot of Wal-Mart in Greensburg, Indiana, and John's derivative claim of loss of consortium. The Johnsons contend that there are genuine issues of material fact on the issues of breach of duty and proximate cause precluding summary judgment.

We affirm.

At all relevant times, Inland Western Greensburg Commons, LLC, was the owner of the property that is the subject of the Johnsons' complaint, and Inland US Management, LLC, was the property management company. Inland leases a portion of the property to Wal-Mart, which is the primary tenant in the Greensburg Commons area. Inland hired Brooks as a subcontractor to perform snow removal and ice remediation at the property. Brooks is required by contract to begin plowing at the property as soon as the snow reaches the depth of one inch.

Brooks arrived at the property at approximately 4:30 p.m. on February 5, 2010, salted the parking lot and the sidewalks using 74 bags of salt, and removed four inches of snow.

2

Brooks's employees remained on the premises until 12:30 a.m. on February 7, 2010, which was approximately one-half hour after Jewel's fall. On February 6, 2010, Jewel was scheduled to work at Wal-Mart during the third shift, which ran from 10:00 p.m. until 7:00 a.m. After clocking in, Jewel attended a mandatory meeting in the store, which lasted between ten and thirty minutes. Jewel then started to stock the shelves.

At approximately 11:25 p.m., Jewel's supervisor issued a "Code L", which meant that employees not assigned to cashier duty were to report to the parking lot to bring shopping carts inside the store. Jewel believed that prior to that evening, she had gathered carts and brought them inside hundreds of times. On the night in question, Jewel was one of the first employees to go outside to retrieve the carts. According to Jewel, it was not slick when she went out the doors, but she could not recall what the conditions were like once she reached the parking lot. Johnson's description of the events leading up to her fall is as follows:

Q:   Could you just kind of walk me through what happened? Describe what happened once you walked outside.

A:   I went straight to the first cluster of carts that I saw and I took them and lined them up and put them in together so that they could be pushed inside, and by that time, there was a lot more of the associates coming out so I just left those there and walked down to       the next cluster of carts. That's all I remember.

Q:   Do you remember falling down?

A:   No.

*Appellant's Appendix* at 59.

During Jewel's deposition taken for purposes of her worker's compensation claim against Wal-Mart, Jewel described her fall as follows:

3

Q:     Tell me what happened then on February 6th of 2010.

A:     Well, I went to work, like I always do. We were out on the floor stocking out—you know, breaking down the freight and stocking shelves. And at 11:25, because I always check my watch when they called, the supervisor called a Code L, which means go to the parking lot and push in carts.

       So I grabbed my coat and went out the door. I came to the first little cluster of carts and I took them and I lined them up so that they could be pushed in. And by that time, you know, most of the other coworkers were coming out. So I went on-I left them there in the line and I went on down to the next cluster of carts. That's the last thing I remember.

Q:     Was the parking lot in good shape? Had it been cleared? How was that?

A:     There was—I mean, there was snow—not snow. See, I don't remember. I just don't remember what it looked like. My focus was going out there and getting the carts in and coming back.

*Id*. at 67.

Jewel also described her fall as follows:

Q:     And is it on the way to that next cluster of carts, is that when you fell?

A:     Apparently.

Q:     You don't remember falling?

A:     No.

Q:     You don't remember slipping?

A:     No.

Q:     You don't know what you slipped on?

A:     No.

Q:     You don't know if you tripped?

4

A: Oh, I definitely didn't trip.

Q: How do you know you didn't trip?

A: Well, I don't know I guess, but if somebody trips they usually fall forward, do they not?

Q: Don't know. I'm asking you.

A: I don't know.

*Id*. at 64.

Johnson testified that, with regard to the location of her fall, "I really have no idea where I fell." *Id*. at 65. She did not recall seeing any ice on the ground when she walked through the doors to head toward the parking lot, and did not recall seeing any precipitation coming down. Further, she did not recall seeing any snow on the ground on the evening she fell. Johnson claims she suffers from head pain and imbalance issues as a result of her fall.

The weather conditions outside were not discussed during the meeting Johnson attended after she reported to work. None of the other employees, including Johnson's supervisor, discussed the conditions of the parking lot on that night.

With respect to her claim against Brooks, Johnson testified that she was unaware of Brooks's existence and did not know that Brooks was the company hired to clear snow at the property. Johnson testified to the following about Brooks:

Q: Let me ask you this. What do you think that Brooks Striping did wrong?

A: I don't know.

Q: Do you know why you sued them?

5

A: I'm not sure what's going on sometimes.

Q: Do you think that Brooks Striping should have done something different?

A: I don't know.

*Id*. at 65.

Rockiena Tomaszewski was another Wal-Mart employee who responded to the Code L at approximately the same time Johnson did. Tomaszewski had her back turned toward Johnson at the time and did not see Johnson fall. Tomaszewski did not know how Johnson fell, nor did she know what Johnson may or may not have slipped or tripped on.

The Johnsons filed their complaint against Brooks and Inland on January 23, 2012. Brooks and Inland each filed motions for summary judgment, which were subsequently granted by the trial court. The Johnsons now appeal.

This appeal involves the trial court's orders granting summary judgment in favor of Brooks and Inland.

> Initially, we note that the trial court's decision on summary judgment "enters appellate review clothed with a presumption of validity." Nevertheless, summary judgment is appropriate only when there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law.
>
> On review of a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court: we must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial.
>
> We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for

6

purposes of the motion for summary judgment. Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. Although the nonmovant has the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his or her day in court.

*Trustcorp Mortg. Co. v. Metro Mortg. Co., Inc.*, 867 N.E.2d 203, 211 (Ind. Ct. App. 2007) (internal citations omitted).

Johnson's action against Brooks and Inland sounds in negligence. She can recover under this theory only if she establishes that they breached a duty owed to her, and that the breach was the proximate cause of her injuries. *See Peters v. Forster*, 804 N.E.2d 736 (Ind. 2004). In order to avoid the entry of summary judgment against her, Johnson must establish facts that support an inference that Brooks and Inland were negligent. *Id.* The injurious act must be both the proximate cause and the cause in fact of an injury. *Correll v. Indiana Dep't of Transp.*, 783 N.E.2d 706 (Ind. Ct. App. 2002), *trans. denied.* "Generally, causation, and proximate cause in particular, is a question of fact for the jury's determination." *Id.* at 707 (quoting *Bush v. N. Ind. Pub. Serv. Co.*, 685 N.E.2d 174, 178 (Ind. Ct. App. 1997), *trans. denied* ). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." *Countrymark Coop., Inc. v. Hammes*, 892 N.E.2d 683, 688 (Ind. Ct. App. 2008), *trans. denied* (quoting *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004)).

Negligence will not be inferred; rather, specific factual evidence, or reasonable inferences that might be drawn therefrom, on each element must be designated to the trial court. *Miller v. Monsanto Co.*, 626 N.E.2d 538, 541 (Ind. Ct. App. 1993). An inference is

7

not reasonable when it rests on no more than speculation or conjecture. *Midwest Commerce Banking Co. v. Livings*, 608 N.E.2d 1010 (Ind. Ct. App. 1993).

As previously stated by this court in *Hayden v. Paragon Steakhouse*, 731 N.E.2d 456, 458-59 (Ind. Ct. App. 2000):

> absent some factual evidence, negligence cannot be inferred from the mere fact of an accident, and causation may not be inferred merely from the existence of an allegedly negligent condition. Without any evidence on how or why James fell, the Haydens are relying on speculation and conjecture to explain the proximate cause of his injuries. The Haydens were required to come forward with specific facts that demonstrate the existence of a negligent condition that caused James' fall and, therefore, his injuries. They have failed to meet this burden. Paragon is entitled to judgment as a matter of law.

We are presented with similar circumstances here. The evidence designated to the trial court reveals that Jewel could not identify how or why she fell, relying instead on speculation and conjecture to explain the cause of her injuries. Furthermore, Jewel could not identify what it was that Brooks had done or failed to do that was the proximate cause of her injuries. The trial court properly concluded that Brooks and Inland were entitled to summary judgment.

"The loss of consortium claim has been described as a claim derivative of the injured spouse's personal injury claim." *Durham ex rel. Estate of Wade v. U-Haul Intern.*, 745 N.E.2d 755, 764 (Ind. 2001). "By this we mean that if the spouse's cause of action for personal injury fails, the loss of consortium claim falls with it." *Id.* Because Jewel's cause of action has failed, so too does John's derivative claim of loss of consortium.

Judgment affirmed.

BAILEY, J., concurs.

KIRSCH, J., dissents with a separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JEWEL L. JOHNSON and <br> JOHN E. JOHNSON,            ) <br><br>    Appellants-Plaintiffs,     ) <br><br>        vs.               ) <br><br> BROOKS STRIPING, INC.,     ) <br> INLAND WESTERN GREENSBURG  ) <br> COMMONS, LLC, and        ) <br> INLAND US MANAGEMENT, LLC,  ) <br><br>    Appellees-Defendants.     ) | No.  16A01-1311-CT-476 |

**KIRSCH, Judge,** *dissenting.*

In this case, we once again confront the dichotomy between Indiana and federal summary judgment procedure.

In *Jarboe v. Landmark Community Newspapers of Indiana, Inc*., 644 N.E.2d 118 (Ind. 1994), our Supreme Court declared:

> Under Indiana's standard, the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence.

In this respect, *Indiana's summary judgment procedure abruptly diverges from federal summary judgment practice*. Under the federal rule, the party seeking summary judgment is not required to negate an opponent's claim. The movant need only inform the court of the basis of the motion and identify relevant portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.E.2d 265, 272. The burden then rests upon the non-moving party to make a showing sufficient to establish the existence of each challenged element upon which the non-movant has the burden of proof. *Id. Indiana does not adhere to Celotex and the federal methodology.*

In the present case, the defendants do not support their motion for summary judgment with any designated evidence to establish the absence of a question of fact on an outcome-determinative issue as to the [plaintiff's] claim. Merely alleging that the plaintiff has failed to produce evidence on each element of [the plaintiff's claim] is insufficient to entitle the defendant to summary judgment under Indiana law.

*Id*. at 123 (emphasis added) (citations omitted).

In his dissent from denial of a petition to transfer in *Lenhardt Tool & Die Co. v. Lumpe*, 722 N.E.2d 824 (Ind. 2000), former Supreme Court Justice Theodore Boehm asserted that there was a "wide-spread misunderstanding of how the summary judgment standard is to work under Trial Rule 56" and that this "incorrect reading of Trial Rule 56 and of *Jarboe,*" "leads to unnecessary expense to litigants and unwarranted demands on judicial resources." *Id*. at 825. He asserted that rather than require that the defendant had to establish a negative (i.e., show that there is no genuine issue of material fact bearing on the issue), it was sufficient for summary judgment that the defendant establish that the plaintiff could not carry his burden of proof at trial on an essential issue of the plaintiffs case. *Id*.

In *Cole v. Gohmann*, 727 N.E.2d 1111, 1116 (Ind. Ct. App. 2000), a panel of this court noted that, while under the federal summary judgment standard, the defendant would be

entitled to summary judgment, under Indiana practice she had not established the absence of a genuine issue of material fact on the breach of duty element of the negligence claim. While we also noted that we may be interpreting *Jarboe* too literally, we stated that until *Jarboe* is expressly clarified or overruled, we are bound to follow the holding. *Id*. Finally, we noted that while we recognized the wisdom of Justice Boehm's approach, we were unable to discern how we could construe *Jarboe* as he did without expressly adopting *Celotex,* which *Jarboe* expressly rejected. *Id*.

In *Deuitch v. Fleming*, 746 N.E.2d 993 (Ind. Ct. App. 2001), another panel of this court noted:

> Summary judgment is rarely appropriate in negligence cases because issues of negligence, contributory negligence, causation and reasonable care are more appropriately left for the determination by a trier of fact. *Ousley v. Board of Comm'rs of Fulton County,* 734 N.E.2d 290, 293 (Ind. Ct. App. 2000), *trans. denied.* More importantly, **under Indiana's standard, the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence.** ***Jarboe v. Landmark Cmty. Newspapers of Indiana, Inc.,* 644 N.E.2d 118, 123 (Ind. 1994)**. *Merely alleging that the plaintiff has failed to produce evidence on each element [of a cause of action] is insufficient to entitle the defendant to summary judgment under Indiana law.*

*Id*. at 997-98 (emphasis added) (internal quotations omitted).

To me, *Jarboe* and its progeny require a reversal of the trial court's summary judgment entry in this case. The defendants, in citing the plaintiff's deposition testimony that she does not recall the particulars of her fall, are "merely alleging that the plaintiff has failed to produce evidence on each element of her claim." *Jarboe*, 644 N.E.2d at 123. According to *Jarboe,* such evidence is "insufficient to entitle the defendant to summary judgment under

11

Indiana law." *Id*.  So, too, here.

I respectfully dissent.