

FILED

Dec 14 2023, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Lonnie D. Johnson
Benjamin A. Katchur
Clendening Johnson & Bohrer, P.C.
Bloomington, Indiana

ATTORNEYS FOR APPELLEE
BUILDING ASSOCIATES, INC.

Crystal G. Rowe
April M. Jay
Kightlinger & Gray, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
TABOR/BRUCE ARCHITECTURE
& DESIGN, INC.

Nicholas C. Nizamoff
Michael D. Heavilon
DeFur Voran, LLP
Fishers, Indiana

ATTORNEYS FOR APPELLEE
EDWARDS MASONRY, INC.

Thomas M. Kimbrough
Michael H. Michmerhuizen
Barrett McNagny LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

BMI Properties, LLC,

*Appellant-Plaintiff,*

v.

Daewoong, LLC;[1] Tabor/Bruce
Architecture & Design, Inc.;
Building Associates, Inc.;[2] and
Edwards Masonry, Inc.,

*Appellees-Defendants.*

December 14, 2023

Court of Appeals Case No.
23A-PL-988

Appeal from the
Monroe Circuit Court

The Honorable
Kara E. Krothe, Judge

Trial Court Cause No.
53C06-2107-PL-1448

**Opinion by Senior Judge Baker**
Judges May and Vaidik concur.

**Baker, Senior Judge.**

## Statement of the Case

[1] BMI Properties, LLC (BMI) appeals from the trial court's order granting
summary judgment in favor of Tabor/Bruce Architecture & Design, Inc.
(Tabor/Bruce), Building Associates, Inc (BAI), and Edwards Masonry, Inc.
(Edwards Masonry). The trial court found that BMI's claims were precluded as
a matter of law by the economic loss doctrine and the acceptance rule.

---

[1] BMI informs us that "[T]o date, Daewoong has failed to appear or participate in this litigation." However,
pursuant to Indiana Appellate Rule 17(A), "A party of record in the trial court . . . shall be a party on
appeal."

[2] Building Associates, Inc. has not filed a separate appellate brief but has sought and was granted permission
to join in the briefs of Edwards Masonry, Inc. and Tabor/Bruce Architecture & Design, Inc.

Concluding that genuine issues of material fact exist making the grant of summary judgment inappropriate and that BMI's claims are not precluded as a matter of law, we reverse and remand.

## Facts and Procedural History

Daewoong, LLC (Daewoong) owned property in Bloomington and contracted with BAI in 2016 for the construction of a mixed-use building on the property. The first floor consisted of commercial units, while the second and third floors were residential apartment units. BMI entered into a purchase agreement with Daewoong for the mixed-use building and property on June 4, 2019.

The purchase agreement provided that BMI had the right to obtain a physical inspection of the property for any "major defect in or with the [property]" and to withdraw from the transaction within fifteen days of the receipt of the inspection report if the report disclosed any material property defects. Appellant's App. Vol. II, pp. 41-42. The purchase agreement further provided that "If [BMI] does not make a written objection to any problem(s) revealed in the report(s) within such time period, the [property] shall be deemed acceptable to [BMI]. *Id.* at 42.

A survey, environmental assessment, and observable conditions physical inspection were completed, and Daewoong provided BMI with an environmental review completed by the Indiana Department of Environmental Management. The parties closed on the property on July 31, 2019.

[5]     Sometime in August 2019, a residential tenant's bed post fell through the floorboard on the day they moved into the apartment. And bricks fell off the exterior of the building, damaging a tenant's vehicle.

[6]     After these events, BMI arranged to have the building inspected by the Veridus Group's Building Forensics Director Dan Weekes. Weekes' inspection included findings of moisture damage to the south and west exterior walls and adjacent areas, cracks located in the brick veneer, improper drainage systems for the brick veneer, and design defects in how the brick veneer was to be constructed. BMI also hired Mold Diagnostics, LLC to perform spore trapping and surface testing. The results of that inspection revealed there were multiple areas with unacceptable levels of airborne spores within the building, and visible black mold, which poses a serious risk to human health.

[7]     BMI initially filed its complaint against Daewoong, but later amended its complaint to name BAI, the general contractor; Edwards Masonry; and the building's architect, Tabor/Bruce. BMI alleged a breach of contract claim against Daewoong. As for the others, BMI alleged negligence and breach of the warranty of habitability, relating to the defects discovered during the inspections. Though BMI served Daewoong by publication, Daewoong has failed to appear or participate in this action. The remaining defendants separately filed motions for summary judgment, with each contending that BMI was precluded from recovery against them under the acceptance rule and economic loss doctrine. The trial court agreed and granted the motions for

summary judgment. BMI now appeals, contending that the entry of summary judgment was inappropriate.

# Discussion and Decision

## Standard of Review

We review a trial court's summary judgment decision de novo, using the same standard as the trial court. *Griffin v. Menard, Inc.*, 175 N.E.3d 811, 812-13 (Ind. 2021). Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C).

"The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law . . . ." *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1270 (Ind. 2009). If the movant satisfies that burden, "the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact." *Id.* "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth . . . ." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009). "We must construe all factual inferences in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party." *Hale v. SS Liquors, Inc.*, 956 N.E.2d 1189, 1191 (Ind. Ct. App. 2011).

The Indiana Supreme Court has explained, "Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014). As a result, while the non-moving party has the burden on appeal of showing the Court that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure the non-movant was not improperly denied a trial. *Brown by Brown v. Southside Animal Shelter, Inc.*, 158 N.E.3d 401, 405 (Ind. Ct. App. 2020), *adhered to on reh'g*, 162 N.E.3d 1121 (2021), *trans. denied*.

## Analysis

### A. The Acceptance Rule

The trial court concluded the acceptance rule bars recovery by BMI because of the lack of privity between BMI, BAI, Edwards Masonry, and Tabor/Bruce. The court found that BMI, who lacked contractual privity, was precluded from recovery by Daewoong LLC's acceptance of the project.

"In order to prevail on a claim of negligence, the plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind. 2004). "Duty is a question of law for the court to decide." *Id.* "Absent a duty, there can be no breach of duty and thus no negligence or liability based upon the breach." *Id.*

The trial court's order was entered prior to our Supreme Court's decision in *U.S. Automatic Sprinkler Corp. v. Erie Ins. Exchange*, 204 N.E.3d 215 (Ind. 2023). In *Automatic Sprinkler*, our Supreme Court observed that the acceptance rule, with its various exceptions, "generally shielded" contractors "from third-party liability once the work is completed and then accepted by the owner." 204 N.E.3d at 225. In other words, "'contractors do not owe a duty of care to third parties after the owner has accepted the work.'" *Peters*, 804 N.E.2d at 738 (quoting *Blake v. Calumet Constr. Corp.*, 674 N.E.2d 167, 170 (Ind. 1996)).

However, the court noted that in *Peters* it abandoned the acceptance rule in favor of the "foreseeability doctrine." 204 N.E.3d at 225. The *Peters* Court held that,

> A rule that provides that a builder or contractor is liable for injury or damage to a third person as a result of the condition of the work, even after completion of the work and acceptance by the owner, where it was reasonably foreseeable that a third party would be injured by such work due to the contractor's negligence, is consistent with traditional principles of negligence upon which Indiana's scheme of negligence law is based.

804 N.E.2d at 742.

In *Automatic Sprinkler*, our Supreme Court "clarif[ied] the foreseeability doctrine's scope in two ways." 204 N.E.3d at 226. "First, the foreseeability doctrine applies when a third party seeks recovery for personal injury that was a foreseeable consequence of a contractor's allegedly negligent work." *Id.* This harmonized the *Peters* decision's goal of "equaliz[ing] the liability field in the

context of negligence claims resulting in injuries to third parties." *Id.* "Second, the doctrine applies when a third party seeks recovery for property damage if personal injury—though not sustained—is a foreseeable consequence of a contractor's allegedly negligent work." *Id.* This harmonized the *Citizen's Gas & Coke Util. v. Amer. Econ. Ins.*, 486 N.E.2d 998, 1000 (Ind. 1985) decision's goal of maintaining the privity requirement's operation to preclude recovery for property damages in a negligence action, where the negligent work poses a risk only to property and not persons. *Id.* at 226-27.

[16] Turning now to the case at hand, we conclude that BMI's claims survive the motions for summary judgment. BMI's complaint alleged that due to the condition of the mixed-use building, a tenant's bedpost broke through the floorboard of the apartment when the tenant was moving in, and airborne spores were present within the building, along with visible black mold, which pose a serious risk to human health. Additionally, the brick veneer of the building was peeling away allegedly due to design defects and improper drainage leading to bricks falling to the ground. A tenant's car was allegedly damaged by the falling brick.

[17] No injuries to a person are alleged to have occurred. And, fortunately, no one was injured when the bedpost broke through the floorboard, no one became ill due to exposure to the airborne spores and/or black mold, and no passersby were injured when the brick veneer peeled away from the building due to the alleged faulty work, falling and striking the vehicle. However, whether personal injury was a foreseeable consequence of BAI, Edwards Masonry, or

Tabor/Bruce's work presents a genuine issue of material fact. We conclude that the trial court, although not having the benefit of our Supreme Court's decision in *Automatic Sprinkler*, erred by granting summary judgment under the acceptance rule.

### B. Economic Loss Doctrine

[18] The trial court also concluded that the economic loss doctrine precluded BMI from recovering for its claims. More specifically, the court held that "the costs [BMI] is aiming to recover, repair to the apartment building, is[sic] purely economic." Appellant's App. Vol. II, p. 21.

[19] "[T]he longstanding rule under Indiana law is that a defendant is not liable in tort when a plaintiff alleges only purely economic loss, which is financial harm arising from the failure of the product or service to perform as expected." *Residences at Ivy Quad Unit Owners Ass'n, Inc. v. Ivy Quad Dev., LLC*, 179 N.E.3d 977, 983 (Ind. 2022) (internal quotations omitted). "Under Indiana's economic loss doctrine, a defendant is not liable in tort 'for any purely economic loss caused by its negligence.'" *Id.* at 982-83 (quoting *Indianapolis-Marion Cnty. Pub. Libr. v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 729 (Ind. 2010)). "'Economic losses' occur when there is no personal injury and no physical harm to other property." *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153-54 (Ind. 2005).

[20] "Because these losses are, essentially 'disappointed contractual or commercial expectations,' contract law—not tort law—is most appropriate for resolving

liability." *Ivy Quad*, 179 N.E.3d at 983 (quoting *Gunkel*, 822 N.E.2d at 154). "Notably, however, pure economic loss excludes damages that either stem from personal injury or are sustained by 'other property.'" *Id.* (quoting *Gunkel*, 822 N.E.2d at 153-54). "When such damages occur, recovery in tort is appropriate, and the economic loss doctrine does not bar recovery." *Id.*

[21] The Court further explained that "[o]ur economic loss doctrine is rooted in the understanding that parties typically allocate the risk of economic loss through a direct, contractual relationship." *Id.* "But in the construction-project context— where contractual privity between each participant may be lacking—parties typically allocate that risk through 'a network or chain of contracts.'" *Id.* (quoting *Indianapolis-Marion Cnty. Pub. Libr.*, 929 N.E.2d at 739). With "'such a contract chain,' the participants retain 'the opportunity to bargain and define their rights and remedies, or to decline to enter into the contractual relationship.'" *Id.* (quoting *Indianapolis-Marion Cnty. Pub. Libr.*, 929 N.E.2d at 740). "And when construction-project participants are connected in this way, the economic loss rule prevents a party from recovering in tort for commercial losses that it could have protected itself against through the contractual relationship." *Id.*

[22] Our Supreme Court summarized the analysis involved as follows: "Thus, when determining whether our economic loss doctrine precludes tort recovery, two considerations guide our review: the type of damages sought and the contractual relationship between the parties." *Id.*

We first look to the contractual relationship between the parties before engaging in an analysis of the type of damages sought. BMI concedes that there was no contractual relationship between it and BAI, Edwards Masonry, and Tabor/Bruce. Appellant's Br. p. 14. Edwards Masonry simply contends that BMI had other options available to allocate its risks, without refuting the lack of contractual relationship. *See* Edwards Masonry Br. p. 18. And Bruce/Tabor states that "BMI . . . had no contract with Tabor/Bruce or any of the other Construction Parties." Bruce/Tabor Br. p. 10. The economic loss doctrine does not apply to this situation because there is no contractual relationship between the parties and, thus, no network or chain of contracts where the parties allocated risks. And, as a consequence, we need not examine the type of damages sought. We conclude that the economic loss doctrine should not preclude BMI's claims from going forward and that the trial court's entry of summary judgment was in error.

## Conclusion

In light of the foregoing, we conclude that neither the acceptance rule nor the economic loss rule entitles the defendants to summary judgment. Therefore, we reverse and remand this matter to the trial court for further proceedings.

Reversed and remanded.

May, J., and Vaidik, J., concur.