James and Diana LOVE, Appellants–
Plaintiffs,

v.

MEYER & NAJEM CONSTRUCTION,
LLC, Appellee–Defendant.

No. 32A01–1006–CR–317.

Court of Appeals of Indiana.

March 30, 2011.

Publication Ordered June 15, 2011.

W.F. Conour, Timothy F. Devereaux, Jeffrey A. Hammond, Conour Devereaux Hammond, Indianapolis, IN, Attorneys for Appellants.

Joseph M. Dietz, Rick D. Meils, Andrew M. Sumerford, Meils Thompson Dietz & Berish, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

James and Diana Love appeal from the trial court's grant of partial summary judgment in favor of Meyer & Najem Construction, LLC (Meyer Najem). The Loves present one issue for review: Did the trial court properly grant Meyer Najem's motion for partial summary judgment upon determining that Meyer Najem did not owe a duty to James?

We reverse.

This case arises out of injuries that James Love sustained on May 13, 2008 while working for General Interiors, Inc. at the Brownsburg High School Classroom Renovation and Addition project (the Project). The Project included the addition of several choir and band practice rooms. Meyer Najem contracted with Brownsburg Community School Corporation (the Owner) to serve as the construction manager for the Project.[1] Likewise, General Interiors directly contracted with the Owner to install acoustical panel ceilings, acoustical wall panels, and acoustical curtains in the choir and band practice rooms. There was no contract between Meyer Najem and General Interiors.

To fulfill its responsibilities, Meyer Najem employed Andrew Slye to serve as a fulltime, on-site superintendent for the Project. James served as the person in charge and responsible for safety procedures for General Interior's crew working on the Project.

In May 2008, the Project was nearing completion. On the day James sustained his injuries, he and another employee of General Interiors were hanging two acoustical curtains in a show choir classroom. The curtain track to which the curtains attached was approximately sixteen to twenty feet off of the floor above a narrow

---

1. Meyer Najems's role as the construction manager involved reviewing the Owner's designs and specifications, preparing cost estimates, developing a project schedule, coordinating safety plans of contractors, and coordinating the sequence of construction for the Project.

horizontal window. The day before, Slye told James that they could not use a scissor lift to install the curtains because Slye was concerned that the scissor lift would damage the newly installed flooring. To accomplish the task of hanging the curtains, James and his co-worker decided to use thirty-foot extension ladders that had rubber cushions on the bottom. James and his co-worker positioned their ladders and hung the first set of curtains. While setting up the ladders to hang the second set of curtains, Slye directed James to put something under the feet of the ladders so that they would not scratch or otherwise damage the floor. James explained to Slye that they had already installed a curtain using the ladders and that the ladders caused no damage to the flooring. Nevertheless, Slye again told James to put something under his ladder to protect the flooring.

According to James, Slye picked up a piece of carpeting and instructed James and his co-worker to put it under their ladders. James maintains that Slye actually helped position the carpet remnant, nap-side down, under the ladders. In contrast to James's recollection of events, Slye stated in his deposition that James looked around and located the carpeting remnant and asked if it was suitable to use under the ladders. Slye indicated that the carpet, if used nap-side down, would protect the flooring and that he conditioned James's choice of carpet as a barrier between the ladders and the floor by stating "as long as it doesn't slide." *Appellants' Appendix* at 118. Slye then left the room. A few minutes later, Slye heard a commotion in the choir room. While working from the ladder to install the second curtain at a height of fifteen to sixteen feet,

the carpeting under the ladder slid causing both James and the ladder to fall. James suffered permanent injury.

The Loves filed their complaint against Meyer Najem on February 5, 2009, alleging among other things that Meyer Najem "assumed a duty of safety by contract and its conduct at the SCHOOL construction site." *Id.* at 16. Meyer Najem filed its answer on March 27, 2009. A year later, on March 30, 2010, Meyer Najem moved for summary judgment, arguing that it owed no duty to Love by contract and that it did not assume a duty by conduct.

The Loves filed a response in opposition to Meyer Najem's motion for summary judgment as well as a request for partial summary judgment in their favor. In their motion, the Loves clarified that their theory of the case was not that Meyer Najem assumed a duty for project-wide safety by contract or by its conduct on the jobsite. Rather, the Loves maintained that their theory of the case was that Meyer Najem assumed a duty to use reasonable care when it asserted control over the means and methods by which General Interior's employees (i.e., Love and his co-worker) could perform their work on the day in question.

On May 26, 2010, the trial court held a hearing on the cross-motions for summary judgment. The trial court entered an order on June 16, 2010, granting Meyer Najem's motion for summary judgment and denying the Loves' cross-motion for summary judgment. The trial court found that "[a]s a matter of law, [Meyer Najem] did not assume, by contract or by conduct, a duty for project-wide safety at the construction site at issue in this cause, and therefore owed no duty to [James Love]."[2] *Id.* at 9. The Loves now appeal.

2. The trial court further ordered that there was no reason for delay and thus deemed its order "final and appealable." *Id.* at 10.

Our standard of review for summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Bd. of Sch. Comm'rs of City of Indianapolis v. Pettigrew*, 851 N.E.2d 326 (Ind.Ct.App.2006), *trans. denied.* All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Bd. of Sch. Comm'rs of City of Indianapolis v. Pettigrew*, 851 N.E.2d 326. Review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* Our standard of review is not altered by the fact that the parties have filed cross-motions for summary judgment. *Alexander v. Marion County Sheriff*, 891 N.E.2d 87 (Ind.Ct.App.2008), *trans. denied.*

To premise a recovery on a theory of negligence, a plaintiff must establish three elements: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff proximately caused by the breach. *Webb v. Jarvis*, 575 N.E.2d 992 (Ind.1991). Here, the trial court determined that Meyer Najem did not owe a duty to James.

" 'Duty' has been defined as 'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.' " *Blake v. Calumet Constr. Corp.*, 674 N.E.2d 167, 170 (Ind.1996) (quoting W. Keeton, PROSSER & KEETON ON THE LAW OF TORTS 356 (5th ed.1984)), *abrogated on other grounds by Peters v. Forster*, 804 N.E.2d 736 (Ind.2004). "Generally, whether a duty exists is a question of law for the court to decide. Sometimes, however, the existence of a duty depends upon underlying facts that require resolution by the trier of fact." *Rhodes v. Wright*, 805 N.E.2d 382, 386 (Ind.2004) (citation omitted). In such cases, the determination of the existence of a duty becomes a mixed question of law and fact, which the fact-finder ultimately resolves. *Carter v. Indianapolis Power & Light Co.*, 837 N.E.2d 509 (Ind.Ct.App.2005), *trans. denied.* "The duty, when found to exist, is the duty to exercise reasonable care under the circumstances. The duty never changes." *Id.* at 515.

In cases in which the existence of a duty is not previously established, Indiana courts analyze three factors in determining whether to impose a duty at common law: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Webb v. Jarvis*, 575 N.E.2d at 995; *Williams v. Cingular Wireless*, 809 N.E.2d 473 (Ind.Ct.App. 2004), *trans. denied.* Indiana recognizes a duty may be imposed upon one who by affirmative conduct or agreement assumes to act, even gratuitously, for another to exercise care and skill in what he has undertaken. *Schlotman v. Taza Café*, 868 N.E.2d 518 (Ind.Ct.App.2007), *trans. denied.* The assumption of a duty creates a special relationship between the parties and a corresponding duty to act in a reasonably prudent manner. *Id.* The existence and extent of such duty are generally questions for the trier of fact. *Id.*

The Loves contend that when Meyer Najem (through its on-site superintendent, Slye) exerted direct influence and control over what equipment General Interiors' employees could and could not use to perform their work and how such equipment could be used, it exceeded its con-

tractual obligations and gratuitously assumed a duty to exercise reasonable care. Specifically, the Loves maintain that in exercising such control by requiring that James and his co-worker put something under their ladders to protect the floor, Meyer Najem actually created the dangerous condition that resulted in James's injuries. Meyer Najem responds that at no time did it assume control over the methods or procedures to be employed by General Interiors' employees. Rather, Meyer Najem claims that Slye only expressed its concern about damage to the floor and left the manner in which that was done in the control of James and his co-worker. Moreover, according to Slye, he conditioned the use of the carpet under the ladders with instructions to make sure the carpet would not slide.

In *McClure v. Strother*, 570 N.E.2d 1319 (Ind.Ct.App.1991), the plaintiff was hired to paint the exterior trim and install gutter screens on a residential property. Both tasks required the use of a ladder. The plaintiff asked the owner if the ground was firm enough upon which to position a 40-foot ladder and whether he (the plaintiff) could use tie-offs to secure the ladder to the gutter. The owner refused to allow the use of tie-offs. While working on the ladder, the plaintiff shifted his weight, causing one side of the ladder to come out of the ground. The plaintiff fell off the ladder and was injured. On the question of duty, this court held that the owner's assurances that the ground was firm enough to support the ladder did not amount to the gratuitous assumption of a duty to provide a safe workplace. With regard to the use of tie-offs, the court held as follows:

> The genuine issue of material fact is whether Mr. Strother refused to allow McClure to use "tie-offs" on the ladder. If he did not refuse to allow the "tie-offs", he was under no duty and is,

therefore, not liable. If he did refuse, however, he may have assumed control over the ladder, an instrumentality in the contractors' control, thereby becoming liable for accidents stemming from the use of the unsecured ladder.

*McClure v. Strother*, 570 N.E.2d at 1323.

The same holds true here. A genuine issue of material fact exists as to whether Meyer Najem (through its on-site superintendent—Slye) assumed control over how the ladder could be used. According to James, out of concern for possible damage to the new flooring, Slye directed him and his co-worker to use the carpet, nap-side down, under their ladders and Slye actually helped put the carpet in place. Slye, on the other hand, maintains that it was James's idea to use the carpet and that he merely indicated that if used nap-side down it would protect the floor and that he further conditionally approved the carpet if it did not slide. The discrepancy between their stories is material to this dispute and must be resolved by the factfinder, not determined as a matter of law. Having concluded that a genuine issue of material fact exists, summary judgment was improper.

Judgment reversed.

MAY, J., and MATHIAS, J., concur.

### ORDER

Appellants, James A. Love and Diana Love, by counsel, filed an Appellant's Motion for Publication.

On June 9, 2011, The court issued an order that DENIED Appellant's Motion for Publication.

Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1.  This Court's order of June 9, 2011 is hereby VACATED and HELD FOR NAUGHT.

2. The Appellant's Motion For Publication is GRANTED and this Court's opinion heretofore handed down in this cause in March 30, 2011, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

FRIEDLANDER, MAY, MATHIAS, JJ., concur.