# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**DAVID W. CRAIG**
**SCOTT A. FAULTLESS**
Craig Kelley & Faultless, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
MID INDIANA SERVICE CO., INC.

**MARK D. GERTH**
**RICHARD A. YOUNG**
Kightlinger & Gray, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GARY LAMB, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1404-CT-224 |
| | ) | |
| MID INDIANA SERVICE | ) | |
| COMPANY, INC., B2 CONTRACTORS, LLC, | ) | |
| C & M WRECKING INC., and | ) | |
| C & M TRUCKING & EXCAVATING INC., | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

**FILED**
Oct 29 2014, 9:56 am

CLERK
of the supreme court,
court of appeals and
tax court

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David A. Shaheed, Judge
Cause No. 49D01-1204-CT-15287

**October 29, 2014**

**OPINION - FOR PUBLICATION**

**SHARPNACK, Senior Judge**

Gary Lamb, while working for Kingdom Electric, a subcontractor together with others of Mid Indiana Service Company, Inc., the general contractor for a construction project, sustained injuries when a trench partially collapsed. Lamb sued Mid Indiana and others to recover damages for his injuries. Mid Indiana moved for summary judgment and Lamb responded. Both parties designated evidence. The trial court granted summary judgment and entered final judgment for Mid Indiana. Lamb appeals. We reverse and remand.

## ISSUE

The issue presented is whether there are any genuine issues of material fact shown in the designated evidence which preclude summary judgment for Mid Indiana.

## DISCUSSION AND DECISION

Lamb contends the trial court erred by granting summary judgment in favor of Mid Indiana. The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which can be determined as a matter of law. *Sheehan Constr. Co., Inc. v. Cont'l Cas. Co.*, 938 N.E.2d 685, 689 (Ind. 2010). Our standard of review is identical to that of the trial court: whether there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 4-5 (Ind. 2010); *see also* Ind. Trial Rule 56(C). Appellate review of a summary judgment motion is limited to those materials designated to the trial court. *Sheehan Constr. Co., Inc.*, 938 N.E.2d at 688. In addition, all facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.*

2

Lamb's claim against Mid Indiana sounds in negligence. To prevail on a claim of negligence, a plaintiff must show: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the defendant's breach of duty. *Kroger Co.*, 930 N.E.2d at 6. Summary judgment is rarely appropriate in negligence cases. *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person – one best applied by a jury after hearing all of the evidence." *Id.*

It is well established in Indiana that an employer or general contractor does not have a duty to supervise the work of an independent contractor to assure a safe workplace and, accordingly, is not liable for the negligence of an independent contractor. *Capitol Constr. Servs., Inc. v. Gray*, 959 N.E.2d 294, 298 (Ind. Ct. App. 2011). "The rationale behind this rule is that a general contractor typically exercises little, if any, control over the means or manner of the work of its subcontractors and requires only that the completed work meet the specifications of the owner in its contract with the general contractor." *Stumpf v. Hagerman Constr. Corp.*, 863 N.E.2d 871, 876 (Ind. Ct. App. 2007), *trans. denied*. However, Indiana case law has recognized five exceptions to this general rule: (1) where the contract requires the performance of intrinsically dangerous work; (2) where one party is by law or contract charged with performing the specific duty; (3) where the performance of the contracted act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal. *Capitol Constr. Servs., Inc.*, 959 N.E.2d at 298.

3

More recently, in *Hunt Construction Group, Inc. v. Garrett*, 964 N.E.2d 222 (Ind. 2012), our Supreme Court spoke on the topic of negligence claims against a general contractor or construction manager for jobsite injuries suffered by a subcontractor's employee. There, the Court pointed to this Court's decision in *Plan-Tec, Inc. v. Wiggins*, 443 N.E.2d 1212 (Ind. Ct. App. 1983), as providing what it termed "a good template" for analyzing these types of claims and stated that the inquiry as to the duty owed by the construction manager/general contractor to the employee for jobsite safety is twofold: (1) whether a duty was imposed upon the construction manager by a contract to which it was a party and (2) whether the construction manager assumed such a duty, either gratuitously or voluntarily. *Hunt*, 964 N.E.2d at 226. Lamb claims neither a duty under any of the five exceptions to the general rule of nonliability nor a duty under the contract; rather, Lamb maintains Mid Indiana assumed a legal duty for his safety by its actions.

Indiana recognizes the imposition of a duty to exercise care and skill upon one who by affirmative conduct assumes to act, even gratuitously, for another. *Love v. Meyer & Najem Constr.*, 950 N.E.2d 7, 10 (Ind. Ct. App. 2011). "The assumption of a duty creates a special relationship between the parties and a corresponding duty to act in a reasonably prudent manner." *Id.* The existence of a duty is generally a question of law for the court to decide. *Rhodes*, 805 N.E.2d at 386. Sometimes, however, the existence of a duty turns on factual issues that must be resolved by the trier of fact. *Id.* In such instances, the determination of the existence of a duty is a mixed question of law and fact, which the factfinder ultimately resolves. *Love*, 950 N.E.2d at 10.

Mid Indiana contends generally that as a general contractor it owed no duty to provide a safe place to work for Lamb. Lamb maintains that Mid Indiana assumed such a duty by undertaking to dig the trench before Lamb could finish his work, thereby creating an unreasonable risk of injury for Lamb.

Our review of the designated materials in the light most favorable to Lamb reveals the following facts. Mid Indiana was the general contractor for the construction of a convenience store. Mid Indiana's sole employee at the construction site was John Conarro. Among other things, Conarro was responsible for scheduling and coordinating the work of the various subcontractors engaged in the project.

One of the subcontractors was Kingdom Electric whose employee Lamb was the foreman of its workers. Kingdom Electric was performing electrical work on the project. One of Lamb's tasks was to install on the outside wall of the building a CT cabinet through which electricity would be furnished to the interior. Electricity would be supplied to the CT cabinet by an electrical cable to be buried underground.

On the day before the accident in which Lamb received his injuries, he had a conversation with Conarro. He told Conarro that before he could install the CT cabinet on the outside wall, he had work to do inside the building. He asked Conarro to delay having the trench dug for the electrical cable until after Lamb installed the CT cabinet and told him that he would get to the CT cabinet installation some time after 10 a.m. the next day.

On the day of the accident, after Lamb and his helper finished the inside work, they went outside to work at installing the CT cabinet. The trench had already been dug. Lamb asked Conarro why the trench was dug before he could install the CT cabinet. Conarro

5

responded that he had things he had to get done and that "he had to dig it out." Appellant's App. p. 128. Lamb asked Conarro what he wanted him to do, and Conarro asked if Lamb could install the cabinet with one man on each side of the trench. Lamb responded that he would do the best he could. Lamb and his co-workers proceeded with the work. Part of the trench collapsed, and Lamb was injured.

After the accident, Lamb said to Conarro that the trench should not have been dug out until the CT cabinet had been installed and that the accident never would have happened had it not been. Conarro agreed that the accident would not have happened.

Also on the day before the accident occurred, Conarro had a conversation with Calvin Smith. Neither party identifies what Smith had to do with the project, but from what he says and what is said about him in the designated materials, it appears he was another subcontractor. Smith stated that he and Conarro discussed whether Smith's crew could dig out the trench for the cable. Smith said Conarro was getting excited and told him he was moving too slowly. Smith said that Conarro "d[id] it hi[m]self." *Id.* at 121. Although Smith did not know who dug the trench, he knew it was not his crew because they did not have the equipment to do the job. However, Conarro did have such equipment. Conarro said Smith was holding Conarro up because his crew was working on the other side of the building and Conarro needed to get the trench dug. Conarro said he was going to dig the trench.

In his deposition, Conarro said that he had the equipment and the skill to dig the trench but that he did not dig the trench and did not know when it was dug. The designated materials do not reflect whether he was asked who dug the trench.

6

Notwithstanding Conarro's denial, there is evidence from which it could be inferred that he either dug the trench himself or directed someone to do it. It is not likely that a trespasser came along and dug the trench. The trench was dug after Lamb's request that it not be dug before he could install the CT cabinet and before he installed the cabinet the next day.

Here, although the general contractor may not have assumed responsibility for providing a safe work place for all subcontractors, by its actions through Conarro it created a condition in the work place that posed an unreasonable risk of harm to Lamb. Thus, there are genuine issues of material fact that preclude summary judgment for Mid Indiana.

CONCLUSION

For the reasons stated, we conclude there exist genuine issues of material fact rendering the entry of summary judgment improper.

Reversed and remanded to the trial court for further proceedings consistent with this opinion.

FRIEDLANDER, J., and MAY, J., concur.