

IN THE

# Court of Appeals of Indiana

Jana Stacy,

*Appellant/Cross-Appellee-Plaintiff*



FILED

Aug 26 2024, 9:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

ASI Select Insurance Corp., and United Dynamics, Inc.,

*Appellees/Cross-Appellants-Defendants*

---

August 26, 2024

Court of Appeals Case No.
23A-CT-2529

Appeal from the Floyd Circuit Court

The Honorable Justin B. Brown, Judge

Trial Court Cause No.
22C01-2102-CT-281

---

**Opinion by Judge Riley**
Judges Kenworthy and Felix concur.

**Riley, Judge.**

## STATEMENT OF THE CASE

In this consolidated appeal, Appellant/Cross-Appellee – Plaintiff, Jana Stacy (Stacy), appeals the trial court's summary judgment in favor of Appellee – Defendant, ASI Select Insurance Corp. (ASI), on Stacy's breach of contract claim. Additionally, on interlocutory appeal, Appellee/Cross-Appellant – Defendant, United Dynamics, Inc. (UDI), appeals the trial court's denial of its motion for summary judgment, which concluded that there is a genuine issue of material fact that UDI's work was negligently completed.

We affirm in part and reverse in part.

## ISSUES

In her appeal against ASI, Stacy presents this court with two issues, one of which we find dispositive and which we restate as follows:

> Whether a genuine issue of material fact exists as to whether
> Stacy failed to timely notify ASI of the damage resulting from
> UDI's work; and

In its interlocutory appeal, UDI presents this court with four issues, one of which we find dispositive and restate as:

> Whether the trial court erred, as a matter of law, by concluding
> that the relationship between UDI and Stacy should have been
> governed by the Indiana Home Improvement Contract Act
> (HICA) and not by the foreseeability doctrine as clarified by our

Indiana Supreme Court's holding in *U.S. Automatic Sprinkler Corporation v. Erie Insurance Exchange,* 204 N.E.3d 215 (Ind. 2023).

## FACTS AND PROCEDURAL HISTORY

In March 2019, Stacy purchased a home located at 2412 Stover Drive, New Albany, Indiana. Shortly after moving into the residence, Stacy noticed drainage issues in the bathtub, with water draining from the bathtub flowing back into the residence. Stacy hired Greenwell Plumbing, Inc. (Greenwell) to address the issue. After running a camera down the drain, Greenwell discovered that a collapsed sewer line was the cause of the backup. Greenwell informed Stacy of the collapse and Stacy retained Greenwell to repair the collapsed line.

On May 15, 2019, two Greenwell employees arrived at the residence with a backhoe to assist in the repair of the damaged sewer line. They located the collapsed portion of the sewer line with a camera, dug to the top of the line with the backhoe, and then dug the remainder of the dirt by hand. Meanwhile Stacy was in the basement of the residence unpacking boxes when she heard two "booms," which she attributed to Greenwell's backhoe hitting the residence. (Appellant's App. Vol. II, p. 190). However, both employees later informed Jason Thompson (Thompson), Greenwell's general manager of services, that the backhoe never struck the residence.

"Six weeks" after Greenwell completed its repair work at the residence, Stacy noticed a crack in the residence's exterior brick work and the foundation

moving inwards. (Appellant's App. Vol. II, p. 190). She contacted Thompson and claimed the crack resulted from Greenwell's employees hitting the residence with the backhoe. In September 2019, Thompson visited the residence to survey the alleged damage. Despite acknowledging that he did not notice any indication that the damage had been caused by a backhoe, as a gesture of goodwill, Thompson offered to retain UDI to repair the damage to the exterior and the foundation of the residence. In exchange for Greenwell retaining UDI to repair the damage for an amount of $4,800, Stacy executed a Standard General Release (Release) in which she released any current or future claim against Greenwell for its work at the residence in exchange for Greenwell paying UDI to repair the damage caused on May 15, 2019. Contained within this Release was the following provision:

> The Customer [Stacy] agrees to release, hold harmless and indemnify the Company [Greenwell] and its affiliates and each of its respective agents, attorneys, employees, directors and officers and the successors, assigns, heirs, executors, administrators and legal representative of each of the foregoing from and against any and all liabilities, action, causes of action, claims, rights obligations charges, damages, costs, attorney's fees, suits, and demands of any and every kind, nature and character, whether known or unknown, fixed or contingent, now existing or later developing that arise out of or relate to the actions or inactions of the Company.

(Appellant's App. Vol. III, p. 158).

[8] During its repair work on Stacy's residence, UDI installed four steel piers to stabilize the home. Stacy claimed UDI incorrectly performed the piering work

and as a result damaged the drywall in the basement, the foundation of the west wall, the exterior bricks, and caused ceiling cracks. UDI completed its work at the residence on October 2, 2019. That same day, Stacy informed ASI, her homeowner's insurance company, of the damage to her home. After receiving notification of the claim, ASI retained Tim Lee (Lee), a structural engineer with U.S. Forensics, to assess the damage to the residence. After inspection, Lee concluded that "the sewer construction work resulted in mortar joint cracks and separations in the concrete masonry unit foundation, additional separation in the west concrete foundation wall, cracks and displacements in the mortar joints of the brick veneer, and cracks in the interior walls and ceilings coverings." (Appellant's App. Vol. III, p. 192). He also found that "the cracks in the walls and ceiling of the building were recent and were the result of repairs to the CMU crawlspace foundation along the south side of the building." (Appellant's App. Vol. III, p. 192). Based on these conclusions, Lee further clarified that the "damage caused by the excavation work was not the result of an impact by" the backhoe. (Appellant's App. Vol. III, p. 193).

[9] On March 16, 2020, ASI denied Stacy's claim after finding that the cracks in the walls and ceilings were due to repair work to the foundation and that faulty, inadequate, or defective workmanship was not covered under the Policy. ASI also specifically noted that "separation in the west concrete foundation wall, cracks and displacements in the mortar joints of the brick veneer, and cracks in the interior walls and ceiling coverings and cracks in the walls and ceilings were caused by the repair to the CMU foundation performed by [UDI] following the

sewer excavation." (Appellant's App. Vol. IV, p. 56). In its letter, ASI reserved the right to deny coverage on other grounds that may arise.

[10] On February 26, 2021, Stacy filed a Complaint, alleging claims of negligent workmanship against Greenwell and UDI, claims for breach of contract against ASI and Greenwell, and a vicarious liability claim against Greenwell. In August 2021, based on the terms of the Release, Stacy dismissed her claims against Greenwell. ASI's Response to Stacy's Complaint asserted in its Affirmative Defenses, among others, that Stacy had failed to provide timely notice of her claim and that her claim was excluded under the Policy to the extent that the claim was the result of faulty, inadequate or defective design, specifications, or workmanship. During discovery, Stacy answered ASI's interrogatories by repeatedly asserting that "[UDI] was hired by Greenwell to repair the damage, and they made it worse." (Appellant's App. Vol. III, p. 161, *see also* in similar wording at pp. 164-65, 166).

[11] On April 7, 2023, ASI moved for summary judgment, filing a memorandum in support and designation of evidence and contending that Stacy's late notice and her release of Greenwell from liability before giving notice of the claim to ASI were material breaches of the Policy such that ASI did not have a duty to provide coverage for the damages under the Policy's provisions. Alternatively, ASI asserted that even if there was an issue of material fact as to Stacy's breach of the Policy, Stacy's own pleadings against Greenwell and UDI with claims of negligent workmanship against both contractors amounted to an admission that the Policy did not provide coverage. Later that same month, on April 28, 2023,

UDI filed its motion for summary judgment, together with a memorandum in support and designation of evidence. In its memorandum, UDI advanced four grounds to grant its motion. First, UDI alleged that it did not owe a duty because Stacy was not in privity of contract with UDI and only property damage had been alleged. Second, UDI contended that the economic loss doctrine precluded Stacy from recovering under a tort theory. Third, in the event UDI owed Stacy a duty, UDI did not commit a breach of that duty because it performed the work correctly. Lastly, Greenwell had released UDI from liability for the damages now claimed by Stacy. On August 1, 2023, Stacy filed her responses in opposition to both ASI's and UDI's motions for summary judgment.

[12] On September 28, 2023, the trial court issued its Order granting summary judgment to ASI, while denying UDI's motion for summary judgment. In its Order, the trial court concluded that there was no genuine issue of material fact that Stacy had released Greenwell from liability prior to reporting her claim to ASI thereby destroying ASI's subrogation rights and that Stacy had failed to provide ASI with timely notice of her claim. In denying UDI's motion, the trial court noted that a genuine issue of material fact remained as to whether UDI's work was negligently performed. On October 10, 2023, the trial court entered final judgment in ASI's favor pursuant to Indiana Trial Rule 54(B).

[13] On October 17, 2023, UDI filed its motion to correct error, motion for certification of order, and motion to enlarge expert disclosure deadline. After a

hearing[1], the trial court denied the motion to correct error. Reaffirming its previous holding on UDI's negligent workmanship, the trial court addressed UDI's other three arguments in detail. The court first concluded that because Stacy was not a party to the contract between UDI and Greenwell, the court declined to find that Stacy was bound by the exculpatory clause of the UDI-Greenwell contract. Second, because Stacy not only characterized her claim as negligent workmanship, but at "oral arguments, Stacy's counsel articulated that it was a claim for breach of contract," UDI's argument that Stacy's claim is precluded by the economic loss doctrine failed. (UDI's App. Vol. II, p. 25). Third, the trial court found that because UDI failed to contract with Stacy as mandated under the HICA which requires a real property improvement supplier to provide a contract to the consumer prior to commencing the work, UDI could not circumvent this requirement by contracting with Greenwell and not Stacy. Even though the trial court denied UDI's motion to correct error, it granted certification of its September 28, 2023 Order for interlocutory appeal.

[14] On January 11, 2024, UDI filed its motion for interlocutory appeal, which this court granted on February 14, 2024. That same day, we consolidated Stacy's already pending appeal against ASI with UDI's interlocutory appeal.

[15] Additional facts will be provided if necessary.

---

[1] The parties did not provide this court with a transcript of the summary judgment hearing or the hearing on UDI's motion to correct error.

# DISCUSSION AND DECISION

I. *Standard of Review*

Stacy challenges the trial court's grant of summary judgment to ASI, while UDI disputes the trial court's denial of its motion for summary judgment. "The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which can be determined as a matter of law." *Lamb v. Mid Ind. Serv. Co.*, 19 N.E.3d 792, 793 (Ind. Ct. App. 2014). "The party moving for summary judgment has the burden of making a *prima facie* showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Mint Mgmt., LLC v. City of Richmond*, 69 N.E.3d 561, 564 (Ind. Ct. App. 2017); Ind. Trial Rule 56(C). Summary judgment is a "high bar" for the moving party to clear in Indiana. *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014). If "the moving party satisfies this burden through evidence designated to the trial court, the non-moving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial." *Biedron v. Anonymous Physician 1*, 106 N.E.3d 1079, 1089 (Ind. Ct. App. 2018) (quoting *Broadbent v. Fifth Third Bank*, 59 N.E.3d 305, 311 (Ind. Ct. App. 2016), *trans. denied*), *trans. denied*. "A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (citation and quotation marks omitted).

[17] We review a court's ruling on a summary judgment motion *de novo*, applying the same standard as the trial court. *Hughley*, 15 N.E.3d at 1003. "In conducting our review, we consider only those matters that were designated to the trial court during the summary judgment stage." *Lowrey v. SCI Funeral Servs., Inc.*, 163 N.E.3d 857, 860 (Ind. Ct. App. 2021), *trans. denied.* "In determining whether issues of material fact exist, we neither reweigh evidence nor judge witness credibility [but] accept as true those facts established by the designated evidence favoring the non-moving party." *Id.* (citations omitted). "Any doubts as to any facts or inferences to be drawn from those facts must be resolved in favor of the nonmoving party." *Denson v. Est. of Dillard*, 116 N.E.3d 535, 539 (Ind. Ct. App. 2018). However, "[m]ere speculation is insufficient to create a genuine issue of material fact to defeat summary judgment." *Biedron*, 106 N.E.3d at 1089. In the summary judgment context, we are not bound by the trial court's findings of fact and conclusions thereon, but they aid our review by providing the reasons for the trial court's decision. *Howard Cnty. Sheriff's Dep't & Howard Cnty. 911 Commc'ns v. Duke*, 172 N.E.3d 1265, 1270 (Ind. Ct. App. 2021), *trans. denied.* The party that lost in the trial court bears the burden of persuading us that the trial court erred. *Biedron*, 106 N.E.3d at 1089.

II. *ASI's Summary Judgment*

[18] The trial court entered summary judgment in favor of ASI based on two prongs: (1) Stacy's late notice of the potentially insured claim prejudiced ASI and (2) by signing the Release, Stacy destroyed ASI's subrogation rights even before she notified the insurance company of the damage to the residence.

*Late Notice*

The duty to notify an insurance company of potential liability is a condition precedent to the insurer's liability to its insured. *Shelter Mut. Ins. Co. v. Barron*, 615 N.E.2d 503, 507 (Ind. Ct. App. 1993), *trans. denied*. As such, "[n]otice is a threshold requirement which must be met before an insurer is even aware that a controversy or matter exists which requires the cooperation of the insured." *Motorist Mutual Insurance Co. v. Johnson,* 218 N.E.2d 712, 717 (Ind. Ct. App. 1966). The notice requirement is "material, and of the essence of the contract." *London Guarantee & Accident Co. v. Siwy,* 66 N.E. 481, 482 (Ind. Ct. App. 1903). The Indiana Supreme Court stated in *Miller v. Dilts*, 463 N.E.2d 257, 265 (Ind. 1984):

> The requirement of prompt notice gives the insurer an opportunity to make a timely and adequate investigation of all the circumstances surrounding the accident or loss. This adequate investigation is often frustrated by a delayed notice. Prejudice to the insurance company's ability to prepare an adequate defense can therefore be presumed by an unreasonable delay in notifying the company about the accident or about the filing of the lawsuit.

"The presumption of prejudice means that if the delay in giving the required notice is unreasonable, the burden falls on the insured to produce evidence that prejudice did not actually occur in the particular situation." *Ind. Farmers Mut. Ins. Co. v. North Vernon Drop Forge, Inc.,* 917 N.E.2d 1258, 1274 (Ind. Ct. App. 2009) (citing *Erie Ins. Exch. v. Stephenson*, 674 N.E.2d 607, 612 (Ind. Ct. App. 1996)). Thus, in a summary judgment action, it is incumbent upon the alleged-

insured to set forth "some evidence" to rebut the presumption that the insurer has "suffered prejudice of its right to conduct a timely and adequate investigation." *Erie Ins. Exch.*, 674 N.E.2d at 612. Once the alleged insured does so, "the burden shifts back to the insurer to establish prejudice." *Ind. Farmers*, 917 N.E.2d at 1274.

ASI's Policy contained a specific provision regarding Stacy's duty to promptly notify the insurance company after a loss:

> **SECTION I – CONDITIONS**
>
> **What Must Be Done After A Loss**
>
> In the event of a loss to which coverage may apply, the following duties must be performed either by you, an "insured" seeking coverage, or a representative of either:
>
> 1. Give immediate notice to us;

(Appellant's App. Vol. III, p. 50). As the notice provision contained in the Policy is clear and unambiguous, Stacy's duty to 'immediately notify' ASI of the loss is a condition precedent to ASI providing coverage under the Policy for the damages arising from the purported negligent work performed by Greenwell and UDI. Because the notice provision is a condition precedent to obtaining coverage under the Policy, we must determine whether Stacy satisfied its duty to "give immediate notice" to ASI. (Appellant's App. Vol. III, p. 50).

To determine whether Stacy gave immediate notice of the loss to ASI, we evaluate whether the notice was given within a reasonable time by considering the purposes for which the notice was given and the circumstances of the particular case. *Sutton v. Littlepage*, 669 N.E.2d 1019, 1023 (Ind. Ct. App. 1996); *Employers Liab. Corp. v. Light, Heat, & Power Co.*, 63 N.E. 54, 56 (Ind. Ct. App. 1902) (holding that "immediate" notice means "reasonable" notice). The designated evidence reflects that on May 15, 2019, Greenwell's backhoe allegedly struck Stacy's residence, resulting in damage to the foundation and a crack in the residence's exterior brick work. However, Stacy did not notice the damage until six weeks later, around the end of June or the beginning of July. At that point, she contacted Thompson, who surveyed the damage in September 2019. After Stacy executed a Release, Greenwell contracted with UDI to repair the damage to the exterior and foundation of the residence. It was not until the day UDI finalized its repair work, on October 2, 2023, approximately three months after the damage of the backhoe incident was discovered and the damage had allegedly been rectified by UDI, that Stacy first contacted ASI and notified the insurance company of the loss. Although the temporal element of our analysis does not elevate this notice as being unreasonable per se, combined with the surrounding circumstances of this three-month time frame, we conclude that the notice was not given within a reasonable time. Within these three months, the damage had been assessed by Greenwell and a purported correction of these damages had been attempted by UDI. Stacy only contacted ASI of the loss after UDI had completed its rectification work and she became convinced that UDI had made the damage

worse. Under these circumstances, we conclude that Stacy failed to give reasonable notice to ASI. *See Miller,* 463 N.E.2d at 266 (court ordered summary judgment to be entered in favor of the three insurance companies which received notice of the accidents giving rise to liability one month, six months, and seven months after their occurrence and which received notice of the resulting lawsuits as early as five days after the suits were filed); *See Askren Hub States Pest Control Servs, Inc. v. Zurich Ins. Co.*, 721 N.E.2d 270, 278 (Ind. Ct. App. 1999) ("We believe that Askren's delay of six months before notifying Zurich of the 'occurrence' constitutes unreasonable notice.").

[22] Even though Stacy did not give ASI reasonable notice of the loss, that failure alone will not bar recovery under the Policy unless ASI suffered prejudice as a result of the delay. *See Miller*, 463 N.E.2d at 265-66; *see also Shelter*, 615 N.E.2d at 507. Although ASI must show actual prejudice from Stacy's unreasonable delay in providing notice about the loss, prejudice to ASI's ability to prepare an adequate defense can be presumed where, as here, there was an unreasonable delay in notification. *See Miller*, 463 N.E.2d at 265. The presumption of prejudice essentially means that if the delay in giving the required notice is unreasonable, the injured party or the insured has the burden to produce evidence that no actual prejudice occurred in the particular situation. *See id*. In order to rebut this presumption that ASI could conduct nothing more than a cursory investigation, Stacy points to her own designated statements, deposition, and photographs of "the work done by Greenwell and [UDI]." (Stacy's Reply Br. p. 18). She also contends that other witnesses were available

for depositions, and she alerts us to the report submitted by U.S. Forensics, the expert retained by ASI to assess the damage.

[23] We conclude that Stacy failed to rebut the presumption of prejudice resulting from her unreasonable delay. Stacy's designated evidence does not address ASI's inability to view the temporary aspects of the original loss and the extent to which each contractor contributed to the damage. At the time notice was given, ASI was unable to evaluate the loss as UDI had already completely altered the original damage, thereby preventing ASI from assessing the original defects. "[T]imely notice gives the insurer an opportunity to investigate while evidence is fresh, evaluate the claim, and participate in early settlement." *Tri-Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997, 1005 (Ind. 2009). Because ASI was prevented from meaningfully investigating the claim due to the unreasonably late notice, Stacy failed in rebutting the presumption of prejudice in favor of ASI.

[24] In an effort to salvage part of her claim against ASI, Stacy requests this court to characterize her loss as two separate damage events. In a single sentence in her appellate brief and expounded on in her reply brief, Stacy now advances the theory that "[t]he separate damage by [UDI] would qualify as a new/separate occurrence under the Policy," and as such, her notice of this loss would have been reasonable as it was provided on the same day as UDI completed its

work.[2] (Stacy's Br. p. 16). However, throughout these proceedings, Stacy has consistently maintained that Greenwell's actions were the "efficient proximate cause"[3] of the damage. (Appellant's App. Vol. III, p. 166). She also acknowledged numerous times that "[UDI] was hired by Greenwell to repair the damage, and they made it worse." (Appellant's App. Vol. III, p. 161, *see also* in similar wording at pp. 164-65, 166). Accordingly, without Greenwell's initial damage to the foundation and the exterior wall, there was no reason for UDI to enter the fray and correct the loss caused by Greenwell. Without having to decide as to whether the loss consisted of one or two occurrences, Stacy only notified ASI on the day UDI completed its purported corrective work of Greenwell's instigated damages. This delay prevented ASI from determining the exact and specific cause of the damage and the extent to which each contractor contributed to the loss. In other words, Stacy's delay in notifying ASI resulted in ASI having to evaluate stale evidence. *See Tri-Etch, Inc.,* 909 N.E.2d at 1005 ("[T]imely notice gives the insurer an opportunity to investigate while evidence is fresh[.]").

---

[2] While ASI claims that the argument of two occurrences was first made by Stacy on appeal, we disagree as Stacy raised this as an alternative argument in her Response in Opposition to ASI's motion for summary judgment. See Appellant's App. Vol. IV, p. 201.

[3] The efficient proximate cause rule states that where a peril specifically insured against sets other causes into motion which, in an unbroken sequence, produce the result for which recovery is sought, the loss is covered, even though other events within the chain of causation are excluded from coverage. "Stated in another fashion, where an insured risk itself sets into operation a chain of causation in which the last step may have been an excepted risk, the excepted risk will not defeat recovery." *Hartford Cas. Ins. Co. v. Evansville Vanderburgh Public Library*, 860 N.E.2d 636, 646 (Ind. Ct. App. 2007).

Because there is no genuine issue of material fact that Stacy's notice of the loss to ASI was unreasonably late, we affirm the trial court's entry of summary judgment in favor of ASI on Stacy's breach of contract claim.[4]

### III. *UDI's Denial of Summary Judgment*

In its interlocutory appeal, UDI contends that the trial court erred as a matter of law in concluding that the HICA should govern the relationship between Stacy and UDI instead of the foreseeability doctrine, as clarified by our Indiana Supreme Court's holding in *U.S. Automatic Sprinkler Corporation v. Erie Insurance Exchange*, 204 N.E.3d 215 (Ind. 2023).

Under long-standing Indiana law, a defendant is liable to a plaintiff for the tort of negligence if (1) the defendant has a duty to conform its conduct to a standard of care arising from its relationship with the plaintiff, (2) the defendant failed to conform its conduct to that standard of care, and (3) an injury to the plaintiff was proximately caused by the breach. *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 726 (Ind. 2010). Construction negligence cases can generally be divided into two categories: "cases where the plaintiffs seeking to recover in tort were in privity of contract with the defendants and cases where they were not." *Id.* at 734. It is uncontested that Stacy and UDI were not in privity of contract; rather

---

[4] Because we affirm the trial court's entry of summary judgment in favor of ASI based on Stacy's untimely notice of the loss, we do not analyze Stacy's claim that the execution of the Release only impacted ASI's subrogation rights against Greenwell and not against UDI.

Greenwell contracted with UDI, with Stacy's approval, to correct the perceived damage caused to the residence by Greenwell. There is also no dispute that Stacy only alleged property damage and did not complain of having been personally injured.

[28] In *U.S. Automatic Sprinkler Corporation v. Erie Insurance Exchange*, 204 N.E.3d 215 (Ind. 2013), our supreme court recently considered whether a duty was owed when, like here, there was no privity of contract between the parties. The supreme court observed that traditionally the acceptance rule, with its various exceptions, "generally shielded" contractors "from third-party liability once the work is completed and then accepted by the owner." *Id*. at 225. In other words, "'contractors do not owe a duty of care to third parties after the owner has accepted the work.'" *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind. 2004) (quoting *Blake v. Calumet Constr. Corp.*, 674 N.E.2d 167, 170 (Ind. 1996)). However, the *Automatic Sprinkler* Court noted that in *Peters* it had abandoned the acceptance rule in favor of the "foreseeability doctrine." *Automatic Sprinkler*, 204 N.E.3d at 225. Specifically, in *Peters*, our supreme court held that,

> A rule that provides that a builder or contractor is liable for injury or damage to a third person as a result of the condition of the work, even after completion of the work and acceptance by the owner, where it was reasonably foreseeable that a third party would be injured by such work due to the contractor's negligence, is consistent with traditional principles of negligence upon which Indiana's scheme of negligence law is based.

*Peters*, 804 N.E.2d at 742. Continuing on the framework established in *Peters*, the Supreme Court, in *Automatic Sprinkler*, "clarif[ied] the foreseeability doctrine's scope in two ways." *Automatic Sprinkler*, 204 N.E.3d at 226. "First, the foreseeability doctrine applies when a third party seeks recovery for personal injury that was a foreseeable consequence of a contractor's allegedly negligent work." *Id*. This harmonized the *Peters* decision's goal of "equaliz[ing] the liability field in the context of negligence claims resulting in injuries to third parties." *Id*. "Second, the doctrine applies when a third party seeks recovery for property damage if personal injury—though not sustained—is a foreseeable consequence of a contractor's allegedly negligent work." *Id*. This harmonized the *Citizen's Gas & Coke Util. v. Amer. Econ. Ins.*, 486 N.E.2d 998, 1000 (Ind. 1985) decision's goal of maintaining the privity requirement's operation to preclude recovery for property damages in a negligence action, where the negligent work poses a risk only to property and not persons. *Automatic Sprinkler*, 204 N.E.3d at 226-27. However, when the contractor's work "possesses a risk to only property—not persons—the privity requirement remains operative and precludes recovery for property damages in a negligence case." *Id*. at 227. In other words, the Court in *Automatic Sprinkler* granted two avenues for third parties to recover against contractors: (1) seek recovery for a personal injury caused by the contractor's allegedly negligent work if the injury was a foreseeable consequence of the allegedly negligent work, or (2) pursue a claim for property damages against the contractor if personal injury was a foreseeable consequence of the contractor's allegedly negligent work. Therefore, for a third party to recover for property damage under the

foreseeability doctrine, "it must be 'reasonably foreseeable' that a third party would be injured by such work." *Id*. at 226 (quoting *Peters*, 804 N.E.2d at 742).

[29]  Accordingly, in order for Stacy to recover for the damage to her residence in the absence of any contractual or privity relationship with UDI, she must establish that it was reasonably foreseeable Stacy would be injured by UDI's perceived defective work. In *Automatic Sprinkler*, our Supreme Court did not elaborate on what constituted a 'reasonably foreseeable' personal injury. Since *Automatic Sprinkler* was decided, Indiana courts have applied this new foreseeability doctrine in two cases. In *BMI Properties, LLC v. Daewong, LLC*, 224 N.E.3d 1000,1005 (Ind. Ct. App. 2023), the subsequent owner of a mixed-use building filed a complaint against the builder of the property, alleging that a bedpost fell through the floor when a tenant was moving in, that bricks fell off the exterior of the building and damaged a nearby car, that the brick veneer of the building was peeling away allegedly due to design defects and improper drainage leading to bricks falling to the ground, and that there were visible mold spores which posed a health risk. Applying *Automatic Sprinkler's* clarification of the foreseeability rule, the *BMI* court concluded that even though no one became injured when the bedpost broke through the floorboard, no one became ill due to exposure to the airborne spores and/or black mold, and no passersby were injured when the brick veneer peeled away from the building, whether personal injury was a foreseeable consequence of these events amounted to a genuine issue of material fact. *Id*. In *Elpers Bros. Construction & Suppel, Inc. v. Smith,* 230 N.E.3d 920, 931 (Ind. Ct. App. 2024), this court evaluated whether a duty was

owed by a development company to a homeowner, when the parties were not in privity of contract and where the homeowner had suffered only property damage. Upon analysis, we found that it was undisputed that the development company's alleged negligence—its construction of other residences in the subdivision contributed to the erosion and sediment buildup in the nearby lake, which resulted in the homeowner's malfunctioning geothermal heating and cooling system—did not pose a reasonably foreseeable risk of personal injury to the homeowner. *Id.* In light of these circumstances, we concluded that the privity requirement set forth in *Citizens Gas* and *Automatic Sprinkler* controlled, and the homeowner was therefore precluded from recovering property damages from the development company. *Id.*

[30] Turning now to the case at hand, we observe that due to the lack of privity between Stacy and UDI, in order to recover for the perceived property damage Stacy must establish that "personal injury—though not sustained—[was] a foreseeable consequence of" UDI's alleged negligent work. *Automatic Sprinkler*, 204 N.E.3d at 226. The evidence reflects that six weeks after Greenwell completed its repair work at the residence, Stacy noticed a crack in the residence's exterior brick work. Unlike in *BMI*, the evidence does not reflect the presence of any dislocated or fallen bricks. *See BMI Properties, LLC*, 224 N.E.3d at 1005. Although the original damage was discovered sometime early July, UDI's repairs did not commence until late September and were completed on October 2. There is no evidence that during this time the damage to the residence worsened or Stacy felt unsafe to remain in the home. Through her

designated evidence and in her appellate brief, Stacy now contends that she presented "substantial evidence demonstrating" that UDI's work did not meet industry standards and "directly resulted in significant property damage." (Appellant's Reply Br. p. 14). She claimed that UDI's negligence "violated the standard practices for foundation stabilization and directly led to the observed property damage." (Appellant's Reply Br. p. 14). Stacy contended that the piering system to rectify the foundation problem required pouring new concrete footers and driving steel piers into bedrock. However, Stacy did not designate any evidence, nor can we find any, establishing that personal injuries might have been a reasonably foreseeable result from UDI's perceived negligent work. To the contrary, Howard Byrd (Byrd), UDI's employee who inspected Stacy's property before and after UDI performed the work, affirmed that UDI's system did not require pouring new concrete footings, rather the piers installed by UDI "were pressed into the ground until they reached load bearing strata." (Appellant's App. Vol. IV, p. 161). Byrd also noted that, when he inspected the property on October 10, 2022, after UDI's work had been completed, he did not see any new cracks in the mortar joints where UDI had made repairs. Similarly, neither Lee's report nor Mark Ricketts,[5] Stacy's expert, found incorrectly installed resistance piers but rather only noted cosmetic repairs to the residence. At no point during these corrective repairs was Stacy ever advised that she needed to vacate the residence because it was unsafe.

---

[5] We note that Mark Ricketts' report also depicts certain cracks in bricks and concrete that are not in the area of the repairs completed by UDI and therefore are not defects that UDI was employed to remedy.

Although Stacy points to a statement from UDI acknowledging that its work could physically injure Stacy or her dwelling, the statement was made as a caution to the homeowner "not to fall in the holes that [UDI] digs" for the footings, it does not amount to a recognition that personal injury was a reasonably foreseeable consequence of the work. (Appellant's App. Vol. VI, p. 121). Based on these circumstances, we do not find any genuine issues of material fact establishing that the alleged negligent workmanship carried with it a reasonable foreseeability of personal injury. *See Automatic Sprinkler*, 204 N.E.3d at 226. Therefore, the privity requirement controls, and Stacy is precluded from recovering her property damages. *See id.*

[31] Trying to avoid the application of our Supreme Court's holding in *Automatic Sprinkler*, Stacy contends that the lack of contract between herself and UDI constituted a violation of the HICA. Relying on Indiana Code section 24-5-11-10, which requires that "[a] real property improvement supplier shall provide a completed real property improvement contract to the consumer before it is signed by the consumer," Stacy argues that UDI, as a real property improvement supplier under I.C. § 24-5-11-6, should have contracted directly with her, as a consumer pursuant to I.C. § 24-5-11-2, and not with Greenwell. She maintains that UDI's failure to comply with these statutory requirements "exposes [UDI] to liability for failing to meet statutory obligations." (Stacy's Reply Br. p. 11).

[32] While we agree with Stacy that public policy strongly favors the enforcement of consumer protection statutes to ensure that homeowners are safeguarded

against deceptive practices and poor workmanship, Stacy's argument in essence amounts to the abrogation of the well-known adage that Indiana courts recognize the freedom of parties to enter into contracts and presume that contracts represent the freely bargained agreement of the parties. *Fresh Cut*, *Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind. 1996).

[33] The reality before us acknowledges that Greenwell and UDI contracted for the benefit of Stacy. The contract between Greenwell and UDI was not a "real property improvement contract" because it was not entered into between a "consumer" and a "real property improvement supplier." I.C. § 24-5-11-4. Therefore, the HICA did not apply to UDI for the purpose of its transaction with Greenwell. Moreover, Stacy consented to Greenwell entering into an "agreement to allow [UDI] to fix the foundation." (Appellant's App. Vol. IV, p. 85). Stacy and Greenwell negotiated the Release, which directly contributed to Greenwell entering into a contract with UDI to correct Greenwell's alleged damages. In the provisions of the Release, Stacy acknowledged that "[t]he customer accepts that by Greenwell paying [UDI] for quoted repairs due to damage caused during service on 05/15/2019 in the amount of $4,800.00 that this claim will be satisfied and closed." (Appellant's App. III, p. 158). Instead of negotiating with Greenwell to pay her a lump sum and then contracting directly with the provider of the repairs, Stacy voluntarily elected to permit Greenwell to coordinate and pay for the foundation repairs. To that end, Greenwell entered into a contract with UDI. It is only after the Release was executed and the repairs made that Stacy complained of the contractual

structure that she freely negotiated and agreed upon. While we agree that HICA's intent is to protect consumers from substandard and deceptive practices in home improvement transactions, Stacy has not designated any evidence supporting the allegation that the agreed upon contractual framework intentionally allowed "UDI to bypass the protections afforded by HICA" to Stacy. (Stacy's Reply Br. p. 11).

[34] Accordingly, based on the designated evidence before us, we conclude that UDI did not owe a duty to Stacy because the parties were not in privity of contract and personal injury was not reasonably foreseeable to result from the alleged acts of negligence. Therefore, as there are no genuine issues of material fact, UDI is entitled to summary judgment as a matter of law. We reverse the trial court's denial of UDI's motion for summary judgment.[6]

## CONCLUSION

[35] Based on the foregoing, we hold that no genuine issue of material fact exists that Stacy failed to timely notify ASI of the damage resulting from UDI's workmanship. However, because we hold that no privity of contract exists between Stacy and UDI and personal injury was not reasonably foreseeable to

---

[6] Because we find UDI's privity of contract argument determinative of the cause before us, we will not address UDI's alternative arguments with respect to the application of the economic loss doctrine and with respect to waiver of claims for property damage pursuant to the exculpatory clause in UDI's contract with Greenwell.

result from the alleged acts of negligence, we reverse the trial court's denial of UDI's motion for summary judgment and enter summary judgment for UDI.

[36] Affirmed in part and reversed in part.

Kenworthy, J. and Felix, J. concur

ATTORNEY FOR APPELLANT

William D.Beyers
Buchanan & Bruggenschmidt, PC
Zionsville, Indiana

ATTORNEYS FOR APPELLEES

William J. Beggs
Ryan M. Heeb
Bunger & Robertson
Bloomington, Indiana

Eric C. McNamar
Edmund L. Abel
Lewis Wagner, LLP
Indianapolis, Indiana